**Harold E. BALDWIN, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

No. 96–1170.

United States Court of Appeals for Veterans Claims.

Sept. 7, 1999.

Julie M. Clifford was on the brief for the appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; Joan Moriarity, Deputy Assistant General Counsel; and Patricia Trujillo were on the brief for the appellee.

Peter Link was on the brief for the Blinded Veterans Association as amicus curiae.

Before NEBEKER, Chief Judge, and KRAMER and HOLDAWAY, Judges.

NEBEKER, Chief Judge:

The appellant, Harold E. Baldwin, appeals a May 16, 1996, decision of the Board of Veterans' Appeals (BVA or Board) which held that a VA regional office (RO) rating decision of November 1956 did not contain clear and unmistakable error (CUE). The appellant filed a brief and a reply brief in support of his claim, and the Secretary filed a brief urging affirmance of the BVA decision. An amicus curiae brief on behalf of the appellant was submitted to the Court by the Blinded Veterans Association. Upon consideration of the submissions to the Court and the record on appeal, the Court will affirm the Board's decision for the following reasons.

## I. FACTS

Mr. Baldwin served in the U.S. Navy from March 1952 to March 1956. Record (R.) at 9. His entrance physical examination noted that he wore glasses and had imperfect vision, corrected to 20/40. R. at 10–13, 16. That examination also indicated normal clinical evaluations for "[e]yes—[g]eneral," "[o]phthalmoscopic," "[p]upils," and "[o]cular motility." R. at 11. In September 1953, an ophthalmology consultation noted, "Old healed central chorioretinitis bilateral," and referred Mr. Baldwin for further examination. R. at 19. ("Chorioretinitis" is defined as "inflammation of the retina and choroid of the eye." "Choroid" is defined as "a vascular membrane containing large branched pigment cells that lies between the retina and the sclera of the eye." WEBSTER'S MEDICAL DESK DICTIONARY 120 (1986).) One week later, a second consultation reported, "[B]ilateral central choroiditis—old—healed—no treatment indicated. This could have been a

toxoplasmosis occurring in utero or early childhood. No treatment indicated." R. at 20. ("Choroiditis" is defined as "inflammation of the choroid of the eye." WEBSTER'S MEDICAL DESK DICTIONARY 120 (1986).) A September 1954 clinical consultation notes that the veteran complained he had broken his glasses six months earlier; however, even prior to that time, he had experienced headaches and blurring vision upon reading. R. at 24. Mr. Baldwin's March 1956 separation examination was normal for "[e]yes—[g]eneral," "[o]phthalmoscopic," "[p]upils," and "[o]cular motility," and noted visual acuity corrected to 20/40. R. at 26–27.

In August 1956, Mr. Baldwin applied for service connection for, inter alia, "headaches and poor vision—since 1954." R. at 31. The RO denied this claim in November 1956, characterizing it as a "6099" claim for "defective vision," and stating, "Enlistment examination noted defective vision with corrected vision of 20/40 bilateral. Vision at discharge is the same. There is no evidence of aggravation beyond natural progress during service." R. at 37. A letter from the RO notifying the veteran of this denial stated, "Before compensation payments can be authorized, it is necessary that the evidence on file show a disease or injury incurred in or aggravated by service in line of duty and disabling to a degree of 10% or more.... Your defective vision condition was not incurred in or aggravated by military service." R. at 39. The veteran did not appeal this decision.

In March 1970, the appellant apparently attempted to reopen his claim. *See* R. at 50 (The Court notes that the record on appeal does not include a copy of the appellant's March 1970 request). In August 1970, a special VA eye examination reported that Mr. Baldwin had been blind for three years, and noted a diagnosis of "central chorioretinitis, bilateral, extensive— with defective vision secondary in each eye, cause unknown (in blind category bilaterally)." R. at 48. A September 1970 rating decision purported to reopen Mr. Baldwin's claim and to "amend" the rating decision of 1956, awarding him a 100% non-service-connected pension for "[Diagnostic Code] 6005–6067 100% Central Chorioretinitis, Bilateral" as well as a "special monthly pension on account of need of regular aid and attendance from 3/31/70." R. at 50.

In April 1993, the veteran filed a "request for re-opening of claim for service connection of blindness based on [CUE]" in the 1956 rating decision. R. at 52. Mr. Baldwin asserted that his eye disease was diagnosed in service, and under the rating schedule extant in 1956, such condition entitled him to a 10% rating, "even without specific disability." *Id.* He stated, "Failure of DVA to evaluate choroiditis and to rate this disease constitutes [CUE] under 38 C.F.R. [§ ] 3.105(a)." *Id.* A rating decision of November 1993 denied the appellant's CUE claim. R. at 58. That decision held that the 1956 decision "clearly considered the history of pre[-]service vision problems and based denial of service connection on the lack of any new eye disease or aggravation of eye disease." *Id.* It further stated, "The prior decisions were not based on belief that the claimant was not seen during service for the preexisting disability." *Id.*

The veteran appealed this decision to the BVA, arguing that the 1956 denial was "arbitrary and capricious, [and] without support in law, regulation, medical principles, or medical documents" because it failed to evaluate the in-service diagnoses of chorioretinitis and choroiditis, and focused only on his refractive vision impairment. R. at 63. Mr. Baldwin asserted that the original denial of his claim constituted a failure on the part of VA in its duty to assist him, lacked adequate reasons or bases, and was violative of VA "[d]ue [p]rocess regulations." R. at 63, 72. He further asserted that the refractive condition was separate and distinct from the eye disease, that there was no evidence that he had any eye disease prior to service, and that the physicians' statements

that the condition was "old" and perhaps attributable to childhood illness, were speculative, insufficient to rebut the presumption of soundness, and without medical basis. R. at 72, 81, 94. Mr. Baldwin urged the BVA to find CUE based on the fact that the 1956 RO was obligated to examine all of the evidence of record, and to exclude the effect of uncomplicated refractive errors in considering claims for impairment of vision, and had it done so, he would have received a 10% rating for the eye disease. R. at 72, 94.

On May 16, 1996, the BVA denied the appellant's claim. R. at 1. The Board stated that the appellant had alleged neither that the RO had failed to correctly apply the law nor that it had failed to have all of the correct then-available-facts before it when it denied his claim. R. at 4–5. The Board characterized the appellant's contentions with respect to the RO denial as ones of failure to assess and construe properly the available evidence; an argument which may not form the basis for a claim of CUE. *Id.* The Board found that Mr. Baldwin had failed to assert with adequate specificity how a "manifestly different" result would be dictated, even if his allegations did represent CUE. R. at 5. Finally, the BVA stated,

> [A]t the time of the November 1956 rating decision, the RO adjudicators had all the correct facts before them and correctly applied the law in light of a reasonable interpretation of the facts. The RO found that the veteran's defective vision existed prior to service and was not aggravated therein. There was ample evidence in the record when the RO made its adverse decision to make that decision reasonable. The contents of the decision show due consideration to controlling legal authority, as it existed at that time, including the presumptions of soundness and aggravation.

R. at 6.

Mr. Baldwin asserts three primary arguments in his appeal to the Court: (1) that the BVA determination that there was no CUE was arbitrary and capricious, because the RO failed to take into consideration all of the facts of record and to apply the existing laws in 1956, and had it done so, a manifestly different result would have been reached; (2) that the BVA failed to give adequate reasons or bases when it stated that the RO had considered the legal authority then controlling, and that there was ample evidence in the record for the RO decision, but failed to state what that legal authority or "ample evidence" was; and (3) that the BVA violated its duty to assist him by failing to consider his argument that VA never adjudicated a claim for eye disease. Appellant's Brief (Br.) at 7–20.

The Secretary responds that the 1996 BVA decision here on appeal is not arbitrary or capricious, and should therefore be affirmed. Secretary's Br. at 9. The Secretary asserts that the appellant's "corrected visual acuity was the same at separation as it was at enlistment[, and] there was no evidence of in-service injury or aggravation. . . . At most, the rating decision's lack of discussion of an etiology for the defective vision occasioned a failure in the duty to assist, which cannot form a valid basis for a CUE claim." *Id.* The Secretary argues that because the veteran's "abnormal visual acuity" was noted at entry, he was not entitled to the presumption of soundness, and because no aggravation of his preexisting condition was shown during service, the rating decision of 1956 was correct. *Id.* at 11–12. With respect to the appellant's claim that the Board failed to address an eye disease claim, the Secretary states:

> In attempting to now make the basis for [his] CUE claim as stated before the BVA into two issues, . . . Appellant runs afoul of the specific pleading requirements for CUE and attempts to circumvent the fact that the duty to assist cannot form the basis of a CUE claim, by asserting that the BVA failed to address an artificial 'issue' that was not

raised or inferred below as a separate claim.

*Id.* at 13.

## II. ANALYSIS

### A. CUE

 Title 38 of the Code of Federal Regulations provides, in pertinent part, that "[p]revious determinations which are final and binding ... will be accepted as correct in the absence of clear and unmistakable error. Where evidence establishes such error, the prior decision will be reversed or amended." 38 C.F.R. § 3.105(a) (1998); *see also* 38 U.S.C. §§ 5109A, 7111 (codifying section 3.105(a)). "In order to find CUE it must be determined (1) that either the facts known at the time were not before the adjudicator or the law then in effect was incorrectly applied, (2) that an error occurred based on the record and the law that existed at the time the decision was made, and (3) that, had the error not been made, the outcome would have been manifestly different." *Grover v. West,* 12 Vet.App. 109, 112 (1999) (citing *Damrel v. Brown,* 6 Vet.App. 242, 245 (1994); *Russell v. Principi,* 3 Vet.App. 310, 313–14 (1992)(en banc)). For a claim of CUE to be reasonably raised, the claimant must provide some degree of specificity as to what the alleged error is, and, unless it is the kind of error that, if true, would be CUE on its face, "persuasive reasons must be given as to why the result would have been manifestly different but for the alleged error." *Fugo v. Brown,* 6 Vet.App. 40, 44 (1993). The veteran must "assert more than a disagreement as to how the facts were weighed or evaluated." *Russell,* 3 Vet.App. at 313.

 In determining whether CUE exists, the scope of the Court's review is restricted to the BVA decision which addressed the veteran's CUE claim, whether that decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (38 U.S.C. § 7261(a)(3)(A); *see also Archer v. Principi,* 3 Vet.App. 433, 437 (1992)), and whether the Board provided an adequate statement of reasons or bases for its denial of CUE (*see Eddy v. Brown,* 9 Vet.App. 52, 57 (1996)). CUE "is the kind of error, of fact or of law, that when called to the attention of later reviewers *compels* the conclusion, to which reasonable minds could not differ, that the result would have been *manifestly* different but for the error." *Fugo,* 6 Vet.App. at 43 (emphasis in the original).

The appellant has attempted to assert a valid CUE claim, for he claims both that the RO did not consider all of the facts of record, such as the discussions of chorioretinitis and choroiditis included in his service medical records (SMRs), and that the RO did not apply the regulations in effect in 1956, because if it had, he would have received a 10% rating for his eye disease, whether or not it was then disabling. The Court finds, however, that the appellant's arguments are unpersuasive, and that in essence the appellant's claim is really one disputing how the 1956 RO weighed the evidence, which cannot support a holding of CUE. *See Russell, supra.*

 With respect to the appellant's contention regarding the facts considered, or not considered, by the RO, the Court notes that it was not until 1990 that ROs were required to summarize the evidence they had considered in their decision and to include the reasons for their denial of a claim. 38 U.S.C. § 5104(b); Veterans' Benefits Amendments of 1989, Pub.L. No. 101–237, § 115(a)(1), 103 Stat.2062, 2065–66 (1989); *see also Norris v. West,* 11 Vet.App. 219, 224 (1998); *Dolan v. Brown,* 9 Vet.App. 358, 362 (1996). The appellant has not proffered any evidence showing that the RO did not examine and consider all of his SMRs, but instead characterizes the lack of specific referral in the rating decision to the medical records discussing chorioretinitis and choroiditis as a failure by the RO to have had these records before them when deciding his claim. The appellant's assertion fails, however, be-

cause there is a presumption of regularity which holds that government officials are presumed to have properly discharged their official duties. *Ashley v. Derwinski,* 2 Vet.App. 307, 308–09 (1992) (quoting *United States v. Chemical Foundation, Inc.,* 272 U.S. 1, 14–15, 47 S.Ct. 1, 71 L.Ed. 131 (1926)). Unless rebutted by clear evidence to the contrary, the Secretary is entitled to the benefit of this presumption. *Id.* The 1956 RO decision does not clearly state what evidence was relied on in the rating decision, stating only, "Enlistment examination noted defective vision with corrected vision of 20/40 bilateral. Vision at discharge is the same. There is no evidence of aggravation beyond the natural progress during service." R. at 37. Because Mr. Baldwin has not presented clear evidence to rebut the presumption of regularity, the Board's conclusion that the 1956 RO decision was the product of the factual record before it in its entirety is not arbitrary or capricious.

■ Upon review of the statutes and regulations extant at the time of the 1956 rating decision, the Court further holds that the BVA was not arbitrary or capricious in its holding that they were correctly applied. *See Ternus v. Brown,* 6 Vet. App. 370, 376 (1994) (Court must examine regulations extant at time of rating decision). The Schedule for Rating Disabilities in effect in 1956 (Schedule), stated:

Service Connection Generally.—Service connection connotes many factors. In general and fundamentally it means establishment of the incurrence of disease or injury or aggravation of preexisting disease or injury resulting in disability coincidentally with the period of active military or naval service. This may be accomplished by the presentation of the affirmative facts showing the inception of an injury or disease during active service or through the operation of the legal presumptions which, when the required conditions are proved, establish the inceptive date of injury or disease

through legislative fiat during the period of active service.

VA Schedule for Rating Disabilities, 1945 edition, at 2. Further, in the section that dealt with "The Organs of Special Sense," the Schedule stated:

1. Refractive Error.—In considering impairment of vision from the standpoint of service connection and evaluation it is necessary to exclude the effect of uncomplicated refractive errors.

. . . .

8. Complete Diagnosis.—. . . Actual pathology, other than mere refractive error, is required to support impairment of visual acuity.

. . . .

Diseases of the Eye

6005 Choroiditis

6006 Retinitis

. . . .

6009 Eye, injury of, unhealed

The above disabilities, in chronic form, are to be rated from 10 percent to 100 percent for impairment of visual acuity or field loss, pain, rest-requirements, or episodic incapacity, combining an additional rating of 10 percent during continuance of active pathology. Minimum rating during active pathology . . . . 10[%.]

*Id.* at 51, 53, 56. The rating code for an "unlisted" eye condition was diagnostic code (DC) 6099. *See Id.* at 10–11 (In selecting diagnostic code numbers, "[t]he first two digits will be selected from that part of the schedule most closely identifying the part, or system of the body involved; the last two digits will be '99' for all unlisted conditions"). The appellant argues that because: (1) the regulations state that refractive errors should not be considered in the rating evaluation; (2) there was a specific diagnostic code for choroiditis which was not mentioned by the RO; and (3) the RO did not evaluate his condition under this diagnostic code but rather under DC 6099, that the correct laws were not applied at the time of Mr.

Baldwin's 1956 evaluation, and had they been, he "would have received a rating for choroiditis rather than a denial for defective vision." Appellant's Brief at 9, 18.

As the Court stated in *Fugo*, "[Even] where the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, the error complained of cannot be, ipso facto, clear and unmistakable." 6 Vet.App. at 43–44. Here, the SMRs state that the appellant had both chorioretinitis and choroiditis that was "old" and "healed." *See* R. at 19–20. The Court agrees with the appellant that the RO in 1956 was not explicit on whether it considered his claim under DC 6005 for choroiditis or DC 6006 for retinitis. However, assuming, but not deciding, that the RO did not consider DC 6005 or DC 6006 in its 1956 evaluation of Mr. Baldwin's claim, because it is not "absolutely clear" that "old healed" choroiditis constitutes (1) a then-current diagnosis of choroiditis or chorioretinitis under DC 6005 or DC 6006, let alone "active pathology" as required by DC 6005 or DC 6006 for a 10% rating; or (2) an "injury or disease" under the "Service Connection Generally" provision of the Schedule, the Board's finding that the 1956 rating decision did not contain clear error must be affirmed. *See Degmetich v. Brown,* 8 Vet. App. 208, 211 (1995) (in considering CUE claim, "[original] claim for service connection must have been accompanied by evidence that the appellant currently had the claimed disability"). Accordingly, because it is not "absolutely clear" that a manifestly different result would have ensued had the RO considered this provision of the Rating Schedule, the Court holds that the BVA decision which found no CUE was not arbitrary or capricious.

Even if the Court accepted the argument that the RO did not adequately consider all of the evidence of record and all of the laws and regulations extant at the time of its decision, had they done so the next step would not necessarily have been the grant of benefits, but rather a request that the appellant undergo an additional medical examination; a breach of the duty to assist, which cannot form the basis of a CUE claim. *See Caffrey v. Brown,* 6 Vet. App. 377 (1994) (VA's breach of duty to assist caused incomplete record but not incorrect record).

The appellant further argues that the RO erred in stating that his condition was not aggravated by service, and that in fact he should have been presumed free of eye disease when he was accepted in service because of the silence on his entrance examination regarding any such condition, and his testimony that he had never been previously diagnosed with any eye condition other than refractive error. While at first glance the appellant's argument looks meritorious, the Court holds that even had the RO considered the appellant to have been sound upon entry into service, a different rating decision would not necessarily have resulted. As noted above, the SMRs discuss only an "old healed" condition. Even had the 1956 RO explicitly stated that it presumed the veteran was in sound condition with respect to any eye disease when he was accepted for service, it is not manifestly clear that in 1956 Mr. Baldwin would have succeeded in obtaining service connection for his chorioiditis or chorioretinitis. *See* Schedule at 2, 51–56. Then, as now, in order for a veteran to obtain service-connected benefits, there must first be evidence of an "injury or disease." *See* Schedule at 2; 38 U.S.C. 5107(a) (requiring all benefits claimants to submit evidence of well-grounded claim); *Caluza v. Brown,* 7 Vet.App. 498, 506 (1995) (well-grounded claim must include "competent evidence of current disability"). Because it is not clear that the appellant had a "current diagnosis" of any eye disease in 1956, error relating to the presumption of soundness by the RO at that time cannot constitute CUE. Because the veteran's argument rests on a contention that the 1956 RO should have considered an "old healed" condition as a diagnosis of current disease, the appellant, in effect, is merely disagreeing with how the

RO weighed the evidence before it. This type of argument cannot support a finding of CUE, and the Court holds that the BVA did not err in so finding. *See Fugo and Eddy, both supra.*

### B. Board's Reasons or Bases

 The appellant argues that the case should be remanded to the Board because its statement of reasons or bases for its denial of CUE was not adequate under 38 U.S.C. § 7104(d)(1). Br. at 19; *see also Gilbert v. Derwinski,* 1 Vet.App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the veteran. *See Caluza,* 7 Vet.App. at 506. The Board stated:

> [A]t the time of the November 1956 rating decision, the RO adjudicators had all the correct facts before them and correctly applied the law in light of a reasonable interpretation of the facts. The RO found that the veteran's defective vision existed prior to service and was not aggravated therein. There was ample evidence in the record when the RO made its adverse decision to make that decision reasonable. The contents of the decision show due consideration to controlling legal authority, as it existed at that time, including the presumptions of soundness and aggravation.

R. at 6. This statement indeed fails to discuss or analyze the precise facts and legal authority relied on by the 1956 RO. However, as concluded above, the appellant's claim amounts only to a disagreement with how the evidence was weighed by the 1956 RO and thus, "any inadequacy in the Board's statement of the reasons or bases for its decision on that claim would be nonprejudicial error because a CUE claim could not have been granted on any of the theories advanced by the appellant." *Eddy,* 9 Vet.App. at 59 *(citing Edenfield v. Brown,* 8 Vet.App. 384, 390 (1995) (en banc) (where Board mistakenly concludes that claim that is not well grounded was well grounded and proceeds to deny claim on merits, such denial is not prejudicial to appellant and is affirmed on appeal to this Court)); 38 U.S.C. § 7261(b) ("[T]he Court shall take due account of the rule of prejudicial error").

### C. Unadjudicated Claim

The appellant argues that the BVA violated its duty to assist by failing to address his argument that his 1956 claim included a separate claim for "eye disease" which had not been adjudicated and remains pending at VA. Br. at 7–10. The original claim filed by Mr. Baldwin was for "poor vision." R. at 31. Once this claim was denied in November 1956, the next correspondence from the appellant to VA regarding any eye claim was in 1970. *See* R. at 50. Throughout this appeal, the appellant and his representative have repeatedly framed the issue in this matter as CUE, and have argued that one of the "errors" was the 1956 RO's failure to consider the appellant's eye disease in adjudicating the "poor vision" claim. *See e.g.* R. at 52 (Appellant's April 25, 1993, submission entitled "Request for re-opening a claim for service connection of blindness based on [CUE]" which states, "[F]ailure of DVA to evaluate choroiditis and to rate this disease constitutes [CUE] under 38 C.F.R. 3.105(a)"); R. at 58 (November 1993 rating decision denying CUE); R. at 63 (Appellant's December 1993 NOD, saying 1956 "evaluation of 'vision defect' [was] not an evaluation of choroiditis.... This is a claim based on [CUE]"); R. at 72 (Appellant's February 1994 appeal to BVA stating, "Claim is based on [CUE]"); R. at 81 (Appellant's representative's April 1994 statement saying, "Issue: Service connection for blindness due to chorioretinitis based on CUE"); R. at 94 (Appellant's representative's statement saying, "Issue: [CUE] in previous rating decision.... There is no indication that this claimant has ever been notified that service connec-

tion for chorioretinitis or choroiditis was denied.... The claimant should be awarded benefits retroactive to the date of the original claim based on 38 CFR 3.301(CUE)").

Not until the appellant's counsel's brief to this Court was the "issue" in this matter framed as two issues: the first encompassing CUE, and the second an unadjudicated claim for eye disease. The Court has jurisdiction to determine whether it has jurisdiction over a particular matter, in this case an unadjudicated eye disease claim. *See Noll v. Brown*, 5 Vet.App. 80, 82 (1993). While the Court notes that an appellant's submissions must be interpreted broadly throughout the nonadversarial VA benefits adjudication process (*See Rivers v. Gober*, 10 Vet.App. 469 (1997); *EF v. Derwinski*, 1 Vet.App. 324 (1991)), and while the Court commends the professionalism exhibited here by the appellant's counsel, the record reflects that the original claim for "poor vision" was just that, and was adjudicated in full as exemplified by the November 1956 rating decision denying a claim for "defective vision." *See Isenbart v. Brown*, 7 Vet.App. 537, 540 (1995) (Court reviewed facts of record and found informal total disability based on unemployability claim was submitted as separate but related claim when appellant filed for increased rating for skin condition).

## III. CONCLUSION

Upon consideration of the record, the Secretary's brief, the appellant's brief and reply brief, and the amicus curiae's brief, the Court holds that the Board's November 8, 1996, decision is AFFIRMED.