Citation Nr: 1448547 
Decision Date: 10/31/14 Archive Date: 11/05/14

DOCKET NO. 10-23 681 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Chicago, Illinois


THE ISSUES

1. Entitlement to service connection for glaucoma, including as secondary to anemia.

2. Entitlement to service connection for anemia.


REPRESENTATION

Appellant represented by: Illinois Department of Veterans Affairs


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

M. Young, Counsel


INTRODUCTION

The appellant is a Veteran who served on active duty from January 1981 to December 1993. These matters are before the Board of Veterans' Appeals (Board) on appeal from an October 2008 rating decision of the Chicago, Illinois Department of Veterans Affairs (VA) Regional Office (RO). In March 2013, a Travel Board hearing was held before the undersigned; a transcript of the hearing is associated with the record. In January 2014, the Board secured a Veterans Health Administration (VHA) medical advisory opinion regarding the etiology of the Veteran's glaucoma. In March 2014 the case was remanded for additional development.

The issue of service connection for glaucoma is being REMANDED to the agency of original jurisdiction AOJ. VA will notify the Veteran if action on her part is required.


FINDING OF FACT

Anemia in service resolved with treatment, and is not shown to have been primary anemia; the Veteran is not shown to have had a chronic disability manifested by anemia during the pendency of the instant claim. 


CONCLUSION OF LAW

Service connection for anemia is not warranted. 38 U.S.C.A. §§ 1110, 1112, 1113, 1131, 1137, 5107 (West 2002); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2014).

REASONS AND BASES FOR FINDING AND CONCLUSION

Veterans Claims Assistance Act of 2000 (VCAA)

The requirements of 38 U.S.C.A. §§ 5103 and 5103A have been met. By correspondence dated in March 2008, VA notified the Veteran of the information needed to substantiate and complete her claim, to include notice of the information that she was responsible for providing, the evidence that VA would attempt to obtain, and how VA assigns disability ratings and effective dates of awards. 

The record contains the Veteran's service treatment records (STRs), and pertinent VA and private treatment records. He was afforded VA examinations in July 2008, May 2014, and June 2014. In an April 2014 release, the Veteran identified the provider of treatment for anemia. In June 2014 the Veteran's treatment records were requested from Dr. Marre and received in July 2014. The Board is satisfied there was compliance with the March 2014 remand instructions. See Stegall v. West, 11 Vet. App. 268 (1998). The Veteran has not identified any pertinent evidence that remains outstanding. VA's duty to assist is met. 

Notably the issue of service connection for anemia was not addressed at the March 2013 Travel Board hearing. The only issue then for consideration (confirmed by the Veteran and her representative at the hearing) was service connection for glaucoma. 

Legal Criteria, Factual Background, and Analysis

Service connection may be established for disability due to disease or injury that was incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131;
38 C.F.R. § 3.303. To substantiate a claim of service connection there must be evidence of: a current disability (for which service connection is sought); incurrence or aggravation of a disease or injury in service; and a causal relationship between the claimed disability and the disease or injury incurred or aggravated in service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Service connection may be established under the provisions of 38 C.F.R. § 3.303(b) when the evidence shows that a Veteran had a chronic condition in service or during the applicable presumptive period. Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d). Service connection may be granted if a chronic disability related to service is shown at any point during the pendency of the claim. McClain v. Nicholson, 21 Vet. App. 319 (2007). Certain diseases, including primary anemia, may service connected on a presumptive basis if manifested to a compensable degree within a specified period postservice (one year for primary anemia). 38 U.S.C.A. §§ 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. 

The determination as to whether these requirements are met is based on an analysis of all the evidence of record and an evaluation of its credibility and probative value. Baldwin v. West, 13 Vet. App. 1 (1999); 38 C.F.R. § 3.303(a). When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990). 

The Board notes that it has reviewed all of the evidence in the record with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence as deemed appropriate and the Board's analysis below will focus specifically on what the evidence shows, or fails to show, as to the claim. 

A June 1984 Navy hospital report shows the Veteran was admitted for removal of cerclage and primary low transverse cesarean section. On admission her laboratory report showed hemoglobin level at 12.0 g/dl and hematocrit of 36.7 percent. Her discharge postpartum hemoglobin was 10.6 g/dl and hematocrit was 31.7 percent. [The normal hemoglobin level for females is 12 to 16 g/dl. When the hemoglobin level is low, the patient has anemia. The normal hematocrit for women is 36 to 48 percent. See NCBI Bookshelf, Hemoglobin and Hematocrit - Clinical Methods. http://www.ncbi.nlm.nih.gov/books/NBK259/]. Her discharge instructions included a prescription for iron and vitamins. Laboratory studies in May 1988 (during a hospitalization) showed hemoglobin of 13.4 g/dl and hematocrit of 41.8 percent. February 1989 laboratory studies at a Navy hospital found hemoglobin of 12.4 g/dl and hematocrit of 38.7 percent. In March 1989 laboratory studies (at a Navy hospital) found hemoglobin of 11.6 g/dl and hematocrit of 33.5 percent. 

On May 1993 examination for re-enlistment, anemia was not shown on clinical evaluation; hemoglobin level was 13.1 g/dl and hematocrit was 39.6 percent. The Veteran reported in a medical history report that she was in good health and not taking any medication at the time. In a November 1993 service separation medical history report, the Veteran reported she was post work-up for anemia and was taking Vitamin B6 and B12 supplements. On separation medical examination anemia was not noted on clinical evaluation. 

Following service, an April 1995 medical report from the Veteran's private physician, Dr. Marre, notes the Veteran gave a history of significant anemia for which she had iron pills prescribed in the past. She had been off the pills for about a year and had been feeling tired and run down. She had blood drawn one month prior (for blood donation) and was told she had "33" which Dr. Marre assumed to be hematocrit. The impression was anemia. April 1995 laboratory studies showed hemoglobin at 8.9 g/dl and hematocrit 28.8 percent. May 1995 Laboratory studies shows hemoglobin at 11.3 g/dl and hematocrit was 36 percent. September 1995 laboratory tests showed hemoglobin at 11.5 g/dl, and hematocrit was 36.8 percent. May 1996 laboratory tests showed hemoglobin at 10 g/dl, and hematocrit was 31.9 percent. Dr. Marre's note of February 1997 shows the Veteran's hemoglobin was 11.3 and hematocrit 36 percent (comparable with last estimate done about 9 months earlier). The impression was anemia. A September 1997 private physician's report noted she was being treated with iron and folic acid. December 1997 1aboratory results show hemoglobin at 12 g/dl, and hematocrit 36.5 percent. April 1999 laboratory results shows hemoglobin at 11.1 g/dl, and hematocrit 33.6 percent. 

A November 1999 routine GYN examination by Dr. Marre reveals the Veteran had been taking ferro-folic supplementation for her anemia. The impression was anemia, iron deficient, chronic. November 1999 laboratory studies show hemoglobin at 12.4 g/dl, and hematocrit 38 percent. March 2000 laboratory studies show hemoglobin at 10.7 g/dl, and hematocrit 33.6 percent. In a September 2002 private treatment report, Dr. Marre noted the Veteran took over-the-counter iron supplements because of the past history of iron deficiency anemia. The impression was chronic iron deficiency anemia by history. September 2002 laboratory results shows hemoglobin at 11.6 g/dl, and hematocrit was 35.2 percent. April 2004 laboratory results shows hemoglobin at 12.9 g/dl, and hematocrit 39.3 percent. 

On July 2008 VA eyes examination, the Veteran reported she had anemia diagnosed in 1990; it was mild and was treated with iron. The examiner diagnosed anemia, and noted that the anemia seemed very mild given that it was only treated with iron. June 2012 laboratory studies shows hemoglobin at 12.5 g/dl and hematocrit 40.3 percent. 

On May 2014 VA hematologic and lymphatic conditions examination, the Veteran reported she had iron deficiency anemia diagnosed when she was in the military in 1990, and was started on iron. She stated it was related to her menses, but she had since gone through menopause and not had much trouble with anemia since; she stopped taking iron around 2002; her menses stopped sometime in 1995. The diagnosis was iron deficiency anemia, resolved. The examiner opined it is less likely than not that the Veteran's current diagnosis of resolved iron deficiency anemia is a chronic disability. She has not had trouble with anemia for many years following the cessation of menstrual cycles and has multiple documented normal blood counts in the last few years. She was no longer on treatment for anemia. In sum, she no longer had an anemia problem or a chronic disability manifested by anemia.

On June 2014 VA (eye) examination it was noted that the Veteran had a history of very mild anemia (hematocrit in the 30 range) for a few years from 1990-1992 in past records. However, other than this she has had a normal hemoglobin level and was no longer anemic.

It is not in dispute that the Veteran had anemia in service (evidenced by her hemoglobin level in June 1984 and March 1989, and her report on November 1993 separation examination that she was post work-up for anemia and was taking Vitamin B6 and B12 supplements). The evidence shows the first postservice diagnosis of anemia was in April 1995. Subsequent to that date, her hemoglobin level fluctuated intermittently between normal and below normal; she was being treated with iron and folic acid. In July 2008 she had a diagnosis of anemia; thereafter, she had multiple documented normal blood counts and she had withdrawn from any treatment for anemia. She reported to the May 2014 VA examiner that she had not had much trouble with anemia since the cessation of her menses sometime in 1995, and she had stopped taking iron in 2002. The May 2014 VA examiner diagnosed iron deficiency anemia, resolved and concluded that the Veteran no longer had an anemia condition or any chronic disability manifested by anemia. 

A service connection claim must be accompanied by evidence which establishes that the claimant currently has the disability claimed. Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992). Without evidence of a current disability there is no valid claim of service connection. Id. The Board has reviewed the record carefully to ascertain whether the Veteran had anemia at any time during the pendency of this claim. See McClain, 21 Vet. App. 319. He filed an the instant informal claim seeking service connection for anemia in January 2008. While the record shows notation of a history of anemia, there is no diagnostic study since she filed the claim in the record that shows she actually had anemia. (See June 2012 laboratory studies which did not show anemia, e.g.). Absent evidence of current anemia disability there is no valid claim of service connection. Notably, primary anemia has not been diagnosed. By definition, primary anemia is one unresponsive to hematinics. See Dorlands 31st Ed. (2007) at 80. The Veteran's anemia was treated/resolved with iron supplement only. Consequently the chronic disease presumptive provisions of 38 U.S.C.A. § 1112; 38 C.F.R. § 3.309(a) do not apply..

In summary, the Veteran's anemia in service was not a primary anemia, was not a chronic disability, and has resolved. She is not shown to have had anemia during the pendency of this claim. Therefore, she has not satisfied the threshold legal requirement for establishing service connection for such disability. See Brammer, 3 Vet. App. 223. The preponderance of the evidence is against the Veteran's claim of service connection for anemia. In such a situation, the benefit of the doubt doctrine does not apply; the appeal in this matter must be denied.

The Veteran is advised that evidence of a current diagnosis of a chronic anemia could be a basis for reopening this claim.


ORDER

Service connection for anemia is denied.


REMAND

Regarding the claim of service connection for glaucoma, the March 2014 Board remand directed the RO to secure for the record (with the Veteran's cooperation by providing any releases necessary) copies of the complete June 12, 2013 records from Low Vision, William Middleton Hospital, Madison, Wisconsin identified by the Veteran in her February 23, 2014 correspondence. The record does not show compliance with this remand instruction, and corrective action is necessary. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance).

Moreover, the Veteran claims service connection for glaucoma due to her treatment for anemia with iron supplement during service and thereafter. In a Veterans Hospital Administration (VHA) medical opinion, the expert medical advisor (chief, ophthalmology glaucoma specialist) noted the Veteran was overwhelmingly likely to be suffering from primary, familial glaucoma, and no other factors need be imputed. Thereafter, a June 2014 VA examiner noted that the Veteran's primary open-angle glaucoma (POAG) is a very slow moving disease, and that for there to be severe enough optic nerve damage for a cup-to-disc ration found, the Veteran more likely than not would have had identifiable glaucomatous damage prior to discharge from the service in 1993. The examiner opined that the Veteran's POAG was more likely than not present during service even though it could not be verified in service records. Accordingly, the critical question is whether a pre-existing familial glaucoma condition was aggravated during the Veteran's active duty service. 

A Veteran is presumed in sound condition except for defects noted when examined and accepted for service. Clear and unmistakable evidence that the disability existed prior to service and was not aggravated by service will rebut the presumption of soundness. 38 U.S.C.A. § 1111. A pre-existing disease will be considered to have been aggravated by active service where there is an increase in disability during service, unless there is a specific finding that the increase in disability is due to the natural progression of the disease. 38 U.S.C.A. § 1153; 38 C.F.R. § 3.306.

VA's General Counsel has determined that the presumption of soundness is rebutted only where clear and unmistakable evidence shows that the condition existed prior to service and that it was not aggravated by service. The General Counsel concluded that 38 U.S.C.A. § 1111 requires VA to bear the burden of showing the absence of aggravation in order to rebut the presumption of sound condition. See VAOGCPREC 3-2003; see also Wagner v. Principi, 370 F.3d 1089 (Fed. Cir. 2004).

The Veteran is presumed sound for glaucoma on entry in service. A VA medical opinion establishes that more likely than not glaucoma was present during service. The Board finds that an additional VA medical opinion is necessary to resolve the medical questions remaining. 
The case is REMANDED for the following:

1. With the Veteran's cooperation (i.e., in providing any further releases needed) the AOJ should secure for the record copies of the complete June 12, 2013 records from Low Vision, William Middleton Hospital, Madison, Wisconsin identified by the Veteran in her February 23, 2014 correspondence.

2. Thereafter, the AOJ should secure for the record an addendum medical opinion from the provider of the June 2014 VA eye consultation, to ascertain whether (in light of the VA opinions in this matter to date) a pre-existing glaucoma disability was aggravated during the Veteran's active duty service. The entire record must be reviewed by the consulting provider. Based on review of the record, the consulting provider must provide an opinion that responds to the following:

(a) Is there any evidence in the record that renders it undebatable from a medical standpoint that the Veteran's glaucoma disability pre-existed his service? If so, please identify such evidence.

(b) If the answer to (a) is yes, is there any evidence in the record that renders it undebatable from a medical standpoint that a pre-existing glaucoma was not aggravated during service? If so, please identify the evidence.

All opinions must include complete rationale that cites to factual data and/or medical literature, as deemed appropriate.

If the June 2014 consulting provider is unavailable (or unable) to provide the opinion sought, the RO should arrange for the record to be reviewed by another ophthalmologist for the opinion(s) sought.

3. The AOJ should the review the record and readjudicate this claim. If it remains denied, the AOJ should issue an appropriate supplemental statement of the case and afford the Veteran and her representative opportunity to respond. The case should then be returned to the Board, if in order, for further appellate review.

The appellant has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).


____________________________________________
George R. Senyk
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs