http://www.va.gov/vetapp16/Files6/1644943.txt

Citation Nr: 1644943 
Decision Date: 11/30/16 Archive Date: 12/09/16

DOCKET NO. 15-42 841 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Buffalo, New York

THE ISSUE

Entitlement to service connection for cancer of the otopharynx, pharnyx, tongue, and tonsil, claimed as due to exposure to herbicides.

REPRESENTATION

Appellant represented by: The American Legion

ATTORNEY FOR THE BOARD

J. Bayles, Associate Counsel

INTRODUCTION

The appellant is a Veteran of the Vietnam Era and Peacetime who served on active duty in the Army from February 1962 to February 1965 and from July 1970 to April 1973. The Veteran also served in the Air Force from January 1966 to January 1970. This matter is before the Board of Veterans' Appeals (Board) on appeal from an April 2014 rating decision of the Buffalo, New York Department of Veterans Affairs (VA) Regional Office (RO). 

Additional treatment records and examination reports were associated with the claims file since the Agency of Original Jurisdiction's (AOJ) most recent adjudication of this matter in October 2015. However, as these records are either not relevant or duplicates of those of record in October 2015, the Board finds it is proper to proceed without referring the case to the AOJ for their initial consideration of the submissions. 38 C.F.R. § 20.1304 (2015). The Board observes that the Veteran is not prejudiced by this process. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issue of whether service connection for the claimed disability is warranted on the basis that it is a disease associated with exposure to herbicides during service in Thailand is being REMANDED to the Agency of Original Jurisdiction (AOJ). The Board, as will be shown, is deciding a threshold element of the service connection as presented (regarding exposure to herbicides). As additional medical evidence is required to decide the remainder of the appeal, that matter is the subject addressed in the remand. 

FINDING OF FACT

Resolving reasonable doubt in the Veteran's favor it is shown that the Veteran was exposed to herbicides while serving in Thailand from August 1966 to August 1967. 

CONCLUSION OF LAW

The Veteran is shown to have been exposed to herbicides in service, and is entitled to consideration of his claim under the presumptive provisions of 38 U.S.C.A. § 1116; 38 C.F.R. §§ 3.307, 3.309 (or by affirmatively showing nexus of the claimed disability to such exposure). 38 U.S.C.A. §§ 1116, 5107 (West 2014); 38 C.F.R. §§ 3.307(a)(6) (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

Veterans Claims Assistance Act of 2000 (VCAA)

Regarding the instant claim, VA's obligation was met by a letter issued in October 2015. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2015); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). As the decision herein regarding whether he had exposure to herbicides during service is favorable to the Veteran, VCAA compliance need not be addressed. In any case, the Veteran's service treatment records (STRs) are associated with the record, and his pertinent post service records have been secured. 

Legal Criteria, Factual Background, and Analysis

The Veteran seeks service connection for a cancer he claims is due to exposure to herbicides while he served in Thailand. In his application, he specified that he was claiming service connection for "soft tissue sarcoma"; medical records on file show that he received a diagnosis of squamous cell carcinoma of the otopharynx, pharnyx, tongue, and tonsil. He contends he was exposed to herbicides, including Agent Orange, in the course of his service at U-Tapao Air Force Base which involved frequent contact with the base perimeter. 

Service connection may be granted for disability due to disease or injury incurred in or aggravated by active military service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. 
§§ 3.303, 3.304. Service connection may also be granted for any disease diagnosed after discharge when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303. To substantiate a claim of service connection, there must be evidence of: (1) a present disability;
(2) incurrence or aggravation of a disease or injury in service; and (3) a causal relationship between the claimed disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004). The determination as to whether these requirements are met is based on an analysis of all the evidence of record and an evaluation of its credibility and probative value. Baldwin v. West, 13 Vet. App. 1 (1999); 38 C.F.R. § 3.303(a).

Certain chronic diseases (to include soft tissue sarcoma and respiratory cancers) may be service connected as due to exposure to herbicides if manifested in a Veteran who served in Vietnam during the Vietnam Era. See 38 U.S.C.A. § 1116; 38 C.F.R. §§ 3.307, 3.309(e). The presumptive provisions of 38 U.S.C.A. § 1116 have been extended to encompass Veterans shown to have been otherwise exposed to tactical herbicides in service, including while serving in Thailand, or on the DMZ in Korea. 

VA has established a procedure for verifying exposure to herbicides in Thailand during the Vietnam era. VA has determined that there was significant use of herbicides on the fenced-in perimeters of military bases in Thailand intended to eliminate vegetation and ground cover for base security purposes, as evidenced in a declassified Vietnam era Department of Defense document titled "Project CHECO Southeast Asia Report: Base Defense in Thailand." Special consideration of herbicide exposure on a facts-found or direct basis should be extended to those Veterans whose duties placed them on or near the perimeters of Thailand military bases. That allows for presumptive service connection of the diseases associated with herbicide exposure. VA Adjudication Manual, M21-1, Part IV, Subpart ii, Chapter 1, Section H, Paragraph 5 [hereinafter M21-1] (M21-1, IV.ii.1.H.5).

The majority of troops in Thailand during the Vietnam era were stationed at the Royal Thai Air Force Bases of U-Tapao, Ubon, Nakhon Phanom, Udorn, Takhli, Korat, and Don Muang. If a Veteran served on one of those air bases as a security policeman, security patrol dog handler, member of a security police squadron, or otherwise served near the air base perimeter, as shown by MOS (military occupational specialty), performance evaluations, or other credible evidence, herbicide exposure should be acknowledged on a facts-found or direct basis. However, that applies only during the Vietnam era, from February 28, 1961, to May 7, 1975. M21-1, IV.ii.1.H.5.

The record reflects that the Veteran served in U-Tapao, Thailand, as an administrative specialist from August 1966 to August 1967. He stated in his June 2013 statement in support of claim that he was exposed to herbicides between August and October 1966. The Veteran indicated that when he first arrived at U-Tapao he was not initially assigned to his regular job with the Base Safety/Security Unit; the base was still under construction, and was assigned to a team working with Thai civilians clearing vegetation around the perimeter of the base. He believes he was exposed to herbicides while working with this team. He reported that the herbicides were dusty and smelled like weed killer. 

In an April 2014 statement, the Veteran noted that during the first six months that he was stationed at U-Tapao, he lived near the runway in a tent made with wooden sides and a canvas top due to the base just being built. Herbicides were being used to clear vegetation along the runway. He was ultimately assigned to base safety, which was also located near the runway, to perform clerical work. He provided a map of U-Tapao showing the location of his barracks and his duty station building, and both buildings were located near the runway and perimeter of the base. He additionally reported that he often drove a jeep outside the base to pick up personnel.

A report from the Defense Personnel Records Information Retrieval System (DPIRS) dated in March 2014 indicates it was unable to verify that members of the Veteran's unit were located at U-Tapao or were assigned to locations in proximity to the base perimeter. There was also no information regarding unit personnel assisting Thai civilians to clear vegetation around the perimeter. Further, historical information did not document Agent Orange or tactical herbicide spraying testing or storage at U-Tapao during July to September 1966, but the "Project CHECO" report mentioned above contained evidence that there was a significant use of herbicides on the fenced in perimeters of military bases in Thailand to remove the foliage that provided cover for enemy forces.

A critical question in this case is whether or not the Veteran served at or near the perimeter while he was stationed at U-Tapao. If so, it may reasonably be conceded that he was exposed to herbicides while serving in Thailand. The evidence weighing against his claim is the DPIRS report stating that his unit was not assigned to a location in proximity to the base perimeter and that there was no information regarding unit personnel assisting Thai civilians clear vegetation. However, his personnel records clearly indicate that he was stationed at U-Tapao from August 1966 to August 1967. He has also provided lay evidence regarding the circumstances of his service such as working and sleeping near the perimeter, which he is competent to report. The Board finds no reason to find these accounts not credible. His descriptions are consistent with the circumstances of his service. The Board notes in part that the DPIRS report weighing against the Veteran's claim is contradicted by official documents in his record (which the Board finds more probative) placing him at U-Tapao. The activities he describes he participated in early in his service at U-Tapao are activities consistent with the construction of a base, and not necessarily ones that would have been described in official records in detail. 

In light of the above, the Board finds the evidence is at least in equipoise regarding the Veteran's exposure to herbicides in service. Accordingly, he is entitled to consideration of his claim under the presumptive provisions of 38 U.S.C.A. § 1116. As the Board has found he was so exposed, the next issue to resolve is whether his current disability is a disease associated with exposure to herbicides (which will be dispositive if found in his favor). This matter is the subject of the Remand below. 

ORDER

The appeal seeking service connection for cancer of the oropharynx, pharynx, tongue, and tonsil is granted to the limited extent that the Veteran is found to have been exposed to herbicides in service (and subject to the further action ordered below). 

REMAND

In accordance with the decision above, it is acknowledged that the Veteran was exposed to herbicides in service. The claimed disability is not shown to have been manifested in service or in the first postservice year. The sole theory of entitlement asserted is that the disability resulted from exposure to herbicides. Accordingly, the remaining question that must be addressed is whether the disability is indeed related to exposure to herbicides, to include on a presumptive bases under 38 U.S.C.A. § 1116; 38 C.F.R. §§ 3.307, 3.309 (or by affirmative evidence of a nexus). 

The Veteran specifically claimed in his application for VA disability benefits that he has a "soft tissue sarcoma" that is related to his exposure to Agent Orange during service. As part of his claim, the record includes a document, dated in July 2016, by the Veteran's treating physician, who indicated he had a current diagnosis of terminal squamous cell carcinoma of the tonsil and has had stage 4 cancer since June 2007. The Veteran's treatment records show that he was diagnosed with squamous cell cancer of the otopharynx, pharnyx, tongue, and tonsil in 2007, and the cancer was treated with radiation and chemotherapy which caused the thyroid to suffer radiation burning and become nonfunctional. In 2012, the Veteran had his right lower mandible, right tongue, right upper palate, and part of his right carotid artery removed and cancerous patches excised from his throat. 

The record as it now stands does not clearly show whether the Veteran's disease qualifies as a disease associated with exposure to herbicides under 38 C.F.R. § 3.309(e), which includes such diseases as respiratory cancers and soft tissue sarcomas. The Board observes in adjudicating this claim the AOJ characterized it as service connection for a soft tissue sarcoma, and it appears that the RO may have assumed that the Veteran's current diagnosis is a type of soft tissue sarcoma. In any case, the Veteran's claim has been denied solely on the basis that he was not shown to have been exposed to herbicides in service; the AOJ did not directly address whether or not the claimed cancer is a disease contemplated by 38 C.F.R. § 3.309(e). Under VA's duty to assist development for a medical opinion that addresses this question is necessary. 

Accordingly, the case is REMANDED for the following:

(This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. The AOJ should arrange for the veteran's record to be forwarded to an appropriate specialist for review and a medical advisory regarding the nature and etiology of the Veteran's current cancer, to include whether it qualifies as a disease associated with exposure to herbicides under 38 C.F.R. § 3.309(e), which includes respiratory cancers and soft tissue sarcomas, or may otherwise affirmatively be found to be a disease associated with such exposure. 

2. The AOJ should then review the record, ensure that all development sought is completed, and readjudicate the claim of service connection for cancer of the otopharynx, pharnyx, tongue, and tonsil (claimed as due to exposure to herbicides). If it remains denied, the AOJ should issue an appropriate supplemental statement of the case, afford the Veteran and his representative opportunity to respond, and return the case to the Board.

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
GEORGE R. SENYK
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs