﻿Citation Nr: AXXXXXXXX
Decision Date: 03/31/21 Archive Date: 03/31/21

DOCKET NO. 200219-63754
DATE: March 31, 2021

ORDER

Entitlement to service connection for a deviated septum (claimed as broken nose) is granted.

REMANDED

Entitlement to service connection for major depressive disorder, unspecified anxiety disorder, other specified trauma and stressor-related disorder and attention-deficit/hyperactivity disorder (ADHD) (also claimed as bipolar disorder and neurological disorder), is remanded.

FINDING OF FACT

Affording the Veteran with the benefit of the doubt, his nasal septum deviation resulted from to an in-service injury.

CONCLUSION OF LAW

The criteria for entitlement to service connection for a deviated septum have been met. 38 U.S.C. §§ 1110, 1112, 1113, 5107; 38 C.F.R. § 3.303.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from May 2018 to June 2018.

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from June 2019 and July 2019 rating decisions by a Department of Veterans Affairs (VA) Regional Office (RO). 

The claim on appeal is an Appeals Modernization Act (AMA) case. Service connection was denied in a June 2019 rating decision. The Veteran filed a July 2019 Notice of Disagreement (NOD) and, in the same correspondence, submitted a VA Form 20-0996 Request for higher level review. Service connection for multiple issues, including those noted above, remained denied in a July 2019 rating decision. The Veteran submitted a February 2020 VA Form 10182 Decision Review Request: Board Appeal (Notice of Disagreement) form to appeal the claims listed above to the Board and selected the Direct Review lane. As explained in the Form 10182, “direct review” means that the Board’s decision must be based upon the evidence of record at the time of the prior decision, with no evidence submission or hearing request. Direct review entails adjudication on an identical record; no additional development takes place. The Board notes that additional evidence has been added to the record since the rating decision on appeal was issued, and the new evidence may not be considered in this direct review appeal. 

Additionally, the Board is bound by favorable findings made by the RO under the AMA. The March 2020 rating decision notes the following favorable findings as to the deviated septum claim: The Veteran has been diagnosed with a disability; VA examination shows deviation to the left of the nasal bone.

1. Entitlement to service connection for a deviated septum.

Service connection may generally be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. 38 C.F.R. § 3.303. To establish service connection for a disability, there must be competent evidence of: (1) a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship or nexus between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). A determination as to whether these requirements are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. Baldwin v. West, 13 Vet. App. 1, 8 (1999).

The benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

The Veteran asserts that his deviated septum resulted from an in-service injury. Specifically, the Veteran asserts that his deviated septum was caused by being hit in the face by a training instructor. See July 2019 NOD.

The Veteran’s service treatment records (STRs) include a March 2018 report of medical examination for enlistment wherein the Veteran’s nose and sinuses are noted normal. In a March 2018 medical prescreen report for enlistment, the Veteran denied ear, nose, or throat trouble; the absence of, or disturbance of sense of smell; or any surgery of his face. STRs also include a short form separation examination that is silent as to his deviated nasal septum. 

The Veteran’s military personnel records include a June 2018 incident report noting the Veteran was assaulted at basic training, resulting in a nasal fracture. A separate record notes the diagnosis of a fractured deviated septum.

Post-service treatment records include August 2019 imaging of the Veteran’s sinuses. 

The claims file also includes a March 2011 facial bones imaging study that predated enlistment. The noted impression was nasal bone fracture. However, the treatment provider noted a nondisplaced fracture of the nasal bone, that the nasal spine appears intact, and the nasal septum is midline. 

The Veteran was afforded a May 2019 VA sinus examination. The examiner did not confirm a diagnosis of deviated septum. Thus, no etiology opinion was attached. 

The same examiner conducted a May 2019 bone conditions (other) examination. The examination report noted deviation to the left of the nasal bone. The examiner also reported that the Veteran’s STRs are quiet as to a nasal fracture, except for the Veteran’s statement. The examiner also noted that the Veteran acknowledged a nasal fracture prior to service. The examiner opined that the claimed condition was less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event, or illness. As a rationale, the examiner noted that there is no documentation in the Veteran’s service record of a nasal fracture, only his statement and no supporting testimony. The examiner concluded that the Veteran did not have a bone fracture suffered during service. 

The Board notes a veteran is considered to have been in sound condition when examined, accepted and enrolled for service, except as to any defects, infirmities, or disorders noted at entrance into service, or where clear and unmistakable (obvious or manifest) evidence demonstrates that an injury or disease existed prior thereto. 28 U.S.C. § 1111; 38 C.F.R. § 3.304(b). The term “noted” refers to “such conditions as are recorded in examination reports.” 38 C.F.R. § 3.304(b); a “[h]istory of preservice existence of conditions recorded at the time of examination does not constitute a notation of such conditions.” 38 C.F.R. § 3.304(b)(1).

When no preexisting condition is noted upon examination for entry into service, a veteran is presumed to have been sound upon entry, and the burden then shifts to VA to rebut the presumption of soundness. Wagner v. Principi, 370 F.3d 1089, 1096 (Fed. Cir. 2004). VA’s General Counsel has held that to rebut the presumption of sound condition under 38 U.S.C. § 1111, the VA must show by clear and unmistakable evidence both (1) that the disease or injury existed prior to service, and (2) that the disease or injury was not aggravated by service. See VAOPGCPREC 3-2003. The claimant is not required to show that the disease or injury increased in severity during service before VA’s duty under the second prong of this rebuttal standard attaches. Wagner v. Principi, supra.

The Board finds in this case that the evidence falls well short of “clear and unmistakable.” The STRs are devoid of evidence suggesting pre-service nasal fracture, and the Veteran denied any previous nose injuries. Viewing the above referenced evidence in total, the Board finds not only that the presumption of soundness has not been rebutted, but also that it is actually more likely than not that the Veteran was sound at entry into service, in terms of nasal septum deviation. The Veteran may have had a nasal bone fracture at a younger age, but he lacks the medical training and credentials to ascertain that any diagnosis of nasal septum deviation was present at entry into service. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). In short, there is insufficient evidence to rebut the presumption of soundness at entry into service, as defined by 38 U.S.C. § 1111, and the Veteran will accordingly be presumed to have been sound in terms of nasal septum deviation at entry into service.

Based on the above, and resolving reasonable doubt in favor of the Veteran, the Board finds that the Veteran’s nasal septum deviation first manifested in service as a result of the June 2018 assault. The claim of entitlement to service connection for nasal septum deviation is therefore granted.

REASONS FOR REMAND

Under the AMA, a remand is permissible only to correct pre-decisional duty to assist errors. 38 C.F.R. § 20.802.

The Veteran’s STRs include a June 2018 clinical report noting that the Veteran was psychiatrically hospitalized during service. The same report also notes that the Veteran’s psychiatric problems started several years before active service but have since gotten worse. A thorough review of the claims file reveals that the Veteran has been afforded an initial posttraumatic stress disorder VA examination, and there are multiple VA medical opinions addressing the etiology of various psychiatric disabilities. These medical opinions are either internally inconsistent or provide a conflicting disability picture and as such, do not help the Board determine if the Veteran is entitled to service connection for the claimed disorder. The Board notes a new VA examination, with an etiology opinion, is necessary in this instance to clarify whether the Veteran has any mental health diagnoses which are etiologically related to service.

The matter is REMANDED for the following action:

Afford the Veteran with the appropriate VA examination with a psychologist or psychologist to ascertain the nature and etiology of his claimed psychiatric disability. The examiner should elicit a full history from the Veteran, and the lay statements of record should be considered. The Veteran is competent to attest to factual matters of which he has first-hand knowledge. The examiner must identify all psychiatric disabilities and opine, for any diagnosed disability, whether it is:

(a.) at least as likely as not (a 50 percent or greater probability) that any current psychiatric disability had its onset in service or is related to the Veteran’s active service? 

(b.) at least as likely as not (a 50 percent or greater probability) that the Veteran’s psychiatric disability was caused or aggravated by (made permanently worse) his service-connected deviated septum? If aggravation is found, please provide a baseline for the severity of the psychiatric disability absent the aggravation.

A rationale for all opinions expressed is requested.

The Board is aware of complications with examination scheduling due to COVID-19. While an examination is not required by this remand, if a new examination is deemed necessary, the Board encourages the medical facility to consider a telephone interview, or other telehealth means, if scheduling an examination is impracticable or would lead to significant delay or burden to the Veteran.

 

 

A. C. MACKENZIE

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board B. Banks, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.