Citation Nr: 1749207 
Decision Date: 10/23/17 Archive Date: 11/06/17

DOCKET NO. 13-36 239 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Providence, Rhode Island


THE ISSUE

Entitlement to service connection for middle ear dysfunction with vertigo, to include as secondary to service-connected tinnitus disability.


REPRESENTATION

Veteran represented by: Massachusetts Department of Veterans Services


WITNESS AT HEARING ON APPEAL

The Veteran 


ATTORNEY FOR THE BOARD

J. Murray, Counsel 


INTRODUCTION

The Veteran served on active duty from October 1961 to August 1962, and he had additional service in the Army National Guard from March 1957 to March 1963, with periods of active duty for training (ACDUTRA) and inactive duty for training (INACDUTRA). 

This matter comes before the Board of Veterans' Appeal (Board) from an August 2012 rating decision by the Department of Veterans Affairs, Regional Office located in Providence, Rhode Island (RO),which in pertinent part, declined to reopen a previously denied claim for entitlement to service connection for middle ear dysfunction with vertigo. The Veteran appealed the denial of his claim. 

The Veteran testified before the undersigned during a Board hearing held at the RO in May 2015. A copy of the hearing transcript has been associated with the claims folder. 

In July 2015, the Board reopened the previously denied claim for service connection and remanded the underlying matter to the RO (via the Appeals Management Center (AMC)) for additional development. In July 2017, the Board again remanded the underlying claim for additional development. 

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).



FINDING OF FACT

The Veteran's middle ear dysfunction with vertigo first manifested decades after his period of service, and the preponderance of the competent evidence is against a finding that it is etiologically related to service, to include as proximately caused or aggravated by a service-connected disability. 


CONCLUSION OF LAW

The criteria for entitlement to service connection for middle ear dysfunction with vertigo have not been met. 38 U.S.C.A. §§ 1110, 1131, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

1. VA's Duty to Notify and Assist

VA satisfied its duty to notify the Veteran pursuant to the Veterans Claims Assistance Act of 2000 (VCAA) in a March 2012 letter. 38 U.S.C.A. §§ 5100, 5102-5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a), 4.2 (2016). 

Concerning the duty to assist, the record reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran, including his service treatment records and post-service treatment records. 

VA provided an examination in December 2016 to determine the nature and etiology of the Veteran's claimed disorder, and a supplemental VA medical opinion was obtained in August 2017 that addressed the question of secondary service connection. There is no argument or indication that the examination or supplemental medical opinion reports are inadequate.

The Veteran was provided a hearing before the undersigned in August 2015. As there is no allegation that either of the hearings provided to the Veteran were deficient in any way, further discussion of the adequacy of the hearing is not necessary. Dickens v. McDonald, 814 F.3d 1359 (Fed. Cir. 2016). 

The claim was remanded in July 2015 and July 2017 for additional development, and the record now contains the Veteran's service personnel and treatment records from his National Guard service and a memorandum identifying the Veteran's periods of ACDUTRA and INACDUTRA. In addition, adequate VA medical opinions were obtained in conjunction with the Veteran's claim for service connection. A review of the record reflects compliance with the Board's July 2015 and July 2017 remand directives, and no further action is required. See Stegall v. West, 11 Vet. App. 268 (1998).

2. Service Connection 

Service connection may be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred or aggravated in active military service. See 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303 (2016). The term "active military, naval, or air service," includes active duty, any period of active duty for training (ACDUTRA) during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in line of duty, and any period of inactive duty for training (INACDUTRA) during which the individual concerned was disabled or died from an injury incurred or aggravated in line of duty or from myocardial infarction or cerebrovascular accident which occurred during such training. 38 C.F.R. § 3.6.

For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. If a condition noted during service is not shown to be chronic, then generally, a showing of continuity of symptoms after service is required for service connection. See 38 C.F.R. § 3.303 (b). The chronicity provision of 38 U.S.C.A. § 3 .303 (b) is applicable where the evidence, regardless of its date, shows that the Veteran had a chronic condition in service or during an applicable presumption period and still has such condition. Regulations also provide that service connection may be granted for a disability diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability is due to disease or injury which was incurred in or aggravated by service. 38 C.F.R. § 3.303 (d). 

Certain chronic diseases, although not shown in service, may be presumed to have incurred in or aggravated by service if they become manifested to a compensable degree within one year of separation from active duty. 38 U.S.C.A. §§ 1101, 1112, 1113 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2016). 

To prevail on the issue of service connection, there must be (1) medical evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the current disability. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection may also be established for a disability that is proximately due to or the result of a service-connected disability. 38 C.F.R. § 3.310 (2016). Also, a disability that is aggravated by a service-connected disability may be service-connected to the degree that the aggravation is shown. 38 C.F.R. § 3.310; Allen v. Brown, 7 Vet. App. 439 (1995).

The determination as to whether the requirements for service connection are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. 38 U.S.C.A. § 7104 (a) (West 2014); Baldwin v. West, 13 Vet. App. 1 (1999); 38 C.F.R. § 3.303 (a). 

If there is at least an approximate balance of positive and negative evidence regarding any issue material to the claim, the claimant shall be given the benefit of the doubt in resolving each such issue. 38 U.S.C.A. § 5107 (West 2014); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); 38 C.F.R. §§ 3.102 (2016). On the other hand, if the Board determines that the preponderance of the evidence is against the claim, it has necessarily found that the evidence is not in approximate balance, and the benefit of the doubt rule is not applicable. Ortiz, 274 F.3d at 1365.
 
In this case, the Veteran seeks entitlement to service connection for middle ear dysfunction with vertigo. He asserts that he suffers from vertigo that is related to his period of service. The Veteran reports that he first experienced ear problems in service, but he denied seeking treatment at that time. In the alternative, it has been raised that the Veteran's vertigo is secondary to his service-connected tinnitus disability. 

A review of the Veteran's service treatment records does not show any complaints, treatment, or diagnosis of middle ear dysfunction or vertigo. While the Veteran's service treatment records do show that he was exposed to loud noise and complained of tinnitus and hearing loss during his period of service, none of these records reflect complaints of other ear problems or symptoms indicative of vertigo. 

The report of his June 1962 examination prior to separation from active service shows that his ears were evaluated as normal. On the associated report of medical history, the Veteran indicated a positive history of ear, nose and/or throat trouble that he associated with hearing loss in his left and history of tonsillectomy. He specifically denied any history of dizziness. A September 1961 statement of Dr. Guria noted complaints of noise in the ears after target practice at the National Guard and also noted some hearing loss but does not indicate complaints or findings of vertigo. The report of his June 1966 examination prior to his separation from the Army National Guard shows that his ears were evaluated as normal and he denied any history of dizziness on the associated report of medical history. 

Post-service medical evidence shows that the Veteran was treated for middle ear dysfunction with vertigo in March 1999. The private treatment record shows that the Veteran presented with a history of acute vertigo while driving his car about a week and half prior. He was evaluated and prescribed medication to treat his symptoms. It was noted that he had a history of tinnitus since his period of military service. Based on clinical evaluation, it was felt that the Veteran had possible middle ear dysfunction with vertigo that were mild in severity and did not impact his ability to function. The Veteran was prescribed medication and advised to follow-up with an ENT specialist if symptoms progressed. 

Subsequent private treatment records show that the Veteran continued to complain of dizziness and disequilibrium. The Veteran underwent vestibular work-up, MRI of the head, and vestibular therapy. An April 2002 private treatment record noted that based on clinical evaluation and diagnostic evidence, it was felt that the Veteran's symptoms of vertigo and hearing loss could be explained by a single episode of left vestibular neuritis, which had left him with significant vestibular deficit. January 2005 private treatment records noted that the Veteran had episode of vestibular neuritis and it remained poorly compensated. 

The report of a December 2016 VA examination shows a current diagnosis of vestibular neuritis. In the examination report, the VA examiner explained that vestibular neuritis was a viral infection of the inner ear that can lead to hearing loss and vertigo. The VA examiner noted that a review of the Veteran's medical records showed he had a sudden onset of hearing loss and vertigo in 1999, and he subsequently underwent vestibular evaluation and therapy treatment. Although his vertigo had improved, it still persists. The Veteran reported that loud noises cause increased tinnitus which leads to vertigo episode that can last from minutes to hours. He stated that vertigo episodes occur more than once a week. He does not take any medication but moves slowly and cautiously to avoid symptoms. 

Based on a review of the claims folder, the December 2016 VA examiner concluded that it was less likely than not that the Veteran's vertigo was result of his period of service. In support of this medical conclusion, the VA examiner found that the Veteran's vertigo was caused by vestibular neuritis and it was first diagnosed in 1999. The VA examiner further concluded that there was no evidence of vertigo indicated in the Veteran's service treatment records and there was no evidence to link the vertigo to any military event. 

Initially, the Board notes that the competent medical evidence of record shows that the Veteran has a current diagnosis of middle ear dysfunction with vertigo. The Board considers the diagnosis of middle ear dysfunction with vertigo as separate from the diagnosis of vestibular neuritis, which was addressed in a prior July 2017 Board decision that denied the claim for service connection. 

The competent medical evidence of record demonstrates that the Veteran was first diagnosed with middle ear dysfunction with vertigo in 1999, which comes more than three decades after his separation from his period of service; and the preponderance of the competent evidence is against a finding that it is otherwise directly related to his period of service. See 38 C.F.R. §§ 3.303, 3.307, and 3.309. 

In the instant case, the weight of the evidence does not demonstrate that the Veteran's middle ear dysfunction with vertigo manifested to such a degree within one year of his separation from service. The Veteran's service treatment records do not show any complaints, treatment, or diagnosis of vestibular-related problems or indicative of vertigo. The first medical evidence of middle ear dysfunction with vertigo comes in March 1999, when the Veteran presented with complaints of acute vertigo for the past week. While the Veteran has asserted that he had vertigo in service, this is not supported by the contemporaneous records in service or after service which do not demonstrate complaints or findings of vertigo. Here, the medical evidence of record does not show that the Veteran's middle ear dysfunction with vertigo first manifested in service, at separation, or until three decades after his discharge from service. 38 C.F.R. §§ 3.303, 3.307, 3.309. 

That being said, the Board cannot ignore the Veteran's assertions that he suffered from ear-related problems since his period of service. See Layno v. Brown, 6 Vet. App. 465, 469-471 (1994) (lay testimony is competent as to symptoms of an injury or illness, which are within the realm of one's personal knowledge; personal knowledge is that which comes to the witness through the use of the senses; lay testimony is competent only so long as it is within the knowledge and personal observations of the witness, but lay testimony is not competent to prove a particular injury or illness). As such, the Board will discuss whether the competent evidence of record demonstrates element (3), nexus or relationship, between the middle ear dysfunction and the Veteran's period of service. 

Here, there is no favorable medical nexus opinion of record that supports such a medical link. Rather, in the report of the December 2016 VA examination, the VA examiner concluded that based on a review of the claims folder, the Veteran's vertigo was caused by his non-service connected vestibular neuritis which was first diagnosed in1999, and his vertigo did not have an onset during his period of service. The VA examiner concluded that there was no evidence to suggest a medical link between the Veteran's vertigo and his period of service. 

There is no medical opinion to the contrary to the VA examiners' medical opinions. 

As noted in the legal criteria above, under 38 C.F.R. § 3.303 (b), an alternative method of establishing the second and third service-connection element for certain chronic diseases, including organic diseases of the nervous system, is through a demonstration of continuity of symptomatology. See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). The Board has considered the Veteran's reports of ear problems since his separation from service.

Although the Veteran is competent to attest to facts surrounding his claim, such as ear pain and other symptomatology he observed during service and since service, as a lay person, he is not competent to offer opinions that require medical knowledge. See Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009). Notably, the etiology of a chronic vestibular disorder, such as middle ear dysfunction with vertigo, cannot be determined by the Veteran's own observations. Further, while the Veteran may sincerely believe that this is the case, he does not have medical training and his statements as to medical etiology are outweighed by the opinion of the 2016 VA examiner discussed above.

The Veteran has not submitted any competent or probative medical or scientific evidence that shows a positive association between his middle ear dysfunction with vertigo and his active service. Based on the foregoing, the Board finds that a medical link between the Veteran's diagnosed disorder and his period of service has not been shown. As such, the Board finds that service connection on a direct basis is not warranted for the claimed condition.

Turning to the alternative theory of entitlement - service connection on a secondary basis, the remaining question is whether the middle ear dysfunction with vertigo is proximately caused or aggravated by his service-connected tinnitus disability. See 38 C.F.R. § 3.310. 

An August 2017 addendum medical statement to the December 2016 VA examination report shows that based on a review of the medical evidence and the findings from the previous examination report, the VA examiner concluded that it is less likely as not that the Veteran's middle ear dysfunction with vertigo is proximately caused or aggravated by his service-connected tinnitus disability. Although it was previously noted that the Veteran reported that increased noise can cause tinnitus that will lead to a vertigo episode, the VA examiner stated that the tinnitus did not permanently aggravate the underlying vertigo disorder. The VA examiner stated that loud noise exposure can cause tinnitus but such exposure does not result in vertigo.

This is highly probative evidence that weighs against any relationship, to include aggravation, between the Veteran's middle ear dysfunction and his service-connected tinnitus disability. While the 2016 VA examination report appears to suggest a medical link between the Veteran's vertigo and his service-connected tinnitus disability, that was ruled out in the subsequent 2017 VA addendum medical statement by the same VA examiner. The 2017 addendum medical statement is based on a review of the entire claims folder, including the prior 2016 VA examination report. 

In sum, the preponderance of the medical evidence is against a finding that the Veteran's middle ear dysfunction with vertigo is etiologically related to his period of service. Moreover, the preponderance of the competent medical evidence is against a finding that his vertigo was proximately caused or aggravated by his service-connected disability. As such, the benefit-of-the-doubt doctrine is not applicable. See 38 U.S.C.A. § 5107 (b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). The claim must be denied.



ORDER

Entitlement to service connection for middle ear dysfunction with vertigo is denied. 




____________________________________________
K. J. ALIBRANDO 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs