Citation Nr: 1801830 
Decision Date: 01/10/18 Archive Date: 01/23/18

DOCKET NO. 17-16 401 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New Orleans, Louisiana


THE ISSUES

1. Entitlement to service connection for Lyme disease. 

2. Entitlement to service connection for a cervical spine disorder. 

3. Entitlement to service connection for an acid reflux disorder. 

4. Entitlement to service connection for balance disorder, to include as due to undiagnosed illness. 

5. Entitlement to a rating in excess of 10 percent for hypertension. 


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States



WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Donna D. Ebaugh, Counsel


INTRODUCTION

The Veteran served on active duty from April 1990 to February 2000 and from November 2005 to February 2006.

These matters come before the Board of Veterans' Appeals (Board) on appeal from November 2015 and May 2016 rating decisions of the RO in New Orleans, Louisiana.

The Veteran testified before the undersigned Veterans Law Judge during an October 2017 videoconference hearing, the transcript of which is included in the file. The undersigned also agreed to leave the record open for 30 days following the hearing so that the Veteran could submit additional evidence, which he did. Waiver of review of the new evidence by the Agency of Original Jurisdiction (AOJ) is not required as the Veteran perfected his appeal after February 2013. 

Finally, the Board notes that the Veteran also initially appealed the issue of entitlement to service connection for hearing loss; however, following the issuance of the statement of the case, the Veteran did not perfect the appeal. The April 2017 Substantive Appeal Form 9 specifically limited the appeal to the issues discussed herein. Thus, the Board does not have jurisdiction over the issue of entitlement to service connection for hearing loss. 
 
This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2017). 38 U.S.C. § 7107(a)(2) (2012).


FINDINGS OF FACT

1. The Veteran has Lyme disease with balance and gait symptoms, and his Lyme disease began during active military service.

2. The Veteran does not have a separate, clinical balance disorder other than balance problems as a symptom of Lyme disease. 

3. The Veteran's degenerative disc disease of the cervical spine began during active military service.

4. The Veteran's gastroesophageal reflux disease (GERD) and hiatal hernia began in service. 

5. The Veteran's hypertension is not manifested by diastolic pressure of predominantly 110 or more or systolic pressure of predominantly 200 or more, and has not been at any time pertinent to the appeal period.


CONCLUSIONS OF LAW

1. The criteria for service connection for Lyme disease with balance and gait problems, are met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1137, 5107 (2012); 38 C.F.R. §§ 3.303, 3.304 (2017).

2. The criteria for service connection for a balance disorder, other than as a Lyme disease symptom, are not met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1137, 5107 (2012); 38 C.F.R. §§ 3.303, 3.304 (2017).

3. The criteria for service connection for degenerative disc disease of the cervical spine are met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1137, 5107 (2012); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309 (2017).

4. The criteria for service connection for GERD and hiatal hernia are met. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1137, 5107 (2012); 38 C.F.R. §§ 3.303, 3.304 (2017).

5. The criteria for a rating in excess of 10 percent for hypertension are not met. 38 U.S.C. § 1155 (2012); 38 C.F.R. §§ 3.102, 4.1, 4.3, 4.7, 4.10, 4.104, Diagnostic Code 7101 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. VA's Duties to Notify and Assist

Neither the Veteran, nor his representative, has raised any issues with the duty to notify or duty to assist. See Scott v McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board."); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to duty to assist argument).

II. Analysis

 a. Service Connection 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

Direct service connection may not be granted without evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disease or injury. 38 U.S.C. § 1112; 38 C.F.R. § 3.304. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Additionally, for Veterans who served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, including arthritis, are presumed to have been incurred in service if manifest to a compensable degree within one year of discharge from service. 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307, 3.309. 

Alternatively, when a disease at 38 C.F.R. § 3.309(a) is not shown to be chronic during service or the one year presumptive period, service connection may also be established by showing continuity of symptomatology after service. See 38 C.F.R. § 3.303(b). The use of continuity of symptoms to establish service connection is limited only to those diseases listed at 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

The determination as to whether the requirements for service connection are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. 38 U.S.C. § 7104 (a); Baldwin v. West, 13 Vet. App. 1 (1999); see 38 C.F.R. § 3.303 (a). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). 

 i. Lyme Disease and Balance Disorder

In this case, the Veteran asserts that he has Lyme disease related to inadvertently swallowing a fly while serving in Iraq. See e.g. Hearing Transcript. 

As an initial matter, the Board notes that there is some dispute as to whether the Veteran has a current diagnosis of Lyme disease. The Veteran filed his claim for service connection based upon a diagnosis of Lyme disease from his private physician, Dr. J.F., who is a "Lyme Literate Medical Doctor, (LLMD). In a January 2016 letter, Dr. J.F. confirmed that the Veteran has a current diagnosis of Lyme disease with co-infections, including mycoplasma infection.

The Veteran was also provided with a VA examination in April 2016 to determine whether he had Lyme disease and if so, whether it was related to service. During the April 2016 VA examination, the Veteran described the onset of his Lyme disease symptoms in 2012, experiencing eye discomfort, gait and balance problems, and joint discomfort. He reported that he saw two neurologists, one of whom told him his symptoms were compatible with Parkinson's disease and the other told him he could not make a diagnosis. The Veteran reported that his primary care physician tested for Lyme in 2015 but the test was negative. The Veteran reported that he saw a Lyme specialist in June 2015 and was diagnosed with chronic Lyme disease. The April 2016 VA examiner noted that the Veteran had been treated with prescription medications for Lyme disease for about 10 months prior to the examination and that the Veteran reported his balance and gait problems were improving. 

When asked if the Veteran had a current diagnosis of an infectious disease, the April 2016 VA examiner indicated "yes" and listed Lyme disease diagnosed in 2015, but, the examiner noted that the Lyme diagnosis was not active at the time of the examination. The examiner conducted a laboratory test for Lyme disease which was negative. The examiner cited the negative test results for Lyme and noted that he was unable to confirm the diagnosis of Lyme disease without resorting to mere speculation. 

In an October 2017 letter, Dr. J.F. explained that there are two types of tests for Lyme disease - enzyme-linked immunosorbent assay (ELISA) and the Western Blot tests. Dr. J.F. acknowledged that the ELISA test is recommended by the Centers for Disease Control but noted his opinion that the ELISA test is very inaccurate. He noted that some studies indicate that the ELISA test is 60-70% inaccurate. Dr. J.F. explained that the Western Blot test by IGenex Laboratories is considered by many LLMD's to be the most accurate Lyme test. Dr. J.F. explained that the Western Blot test indicates test results on bands. Dr. J.F. noted that the Veteran's laboratory results had several "indeterminates," which he noted to the untrained eye would appear as if the Veteran tested negative. But Dr. J.F. explained that an "indeterminate" result is actually a result where something was found but the test was not sensitive enough to call it a positive result. Dr. J.F. noted that most LLMD's accept indeterminate results as weak positive results. Dr. J.F. opined that viewing the Veteran's weak positive results on the Western Blot test, the Veteran definitely has Lyme disease. Dr. J.F. also explained that the longer a person has Lyme disease, the weaker the laboratory results will be. See Dr. J.F.'s October 2017 medical opinion.

The Veteran submitted a medical journal article that substantiates Dr. J.F.'s position on all of the points regarding the accuracy and interpretation of laboratory results. See "Laboratory Tests" by Tom Grier, https://www.lymeneneteurope.org/info/laboratory-tests. 

Dr. J.F. also noted that he based the Lyme disease diagnosis on the Veteran's description of the series of events leading to his current symptoms. Dr. J.F. considered the Veteran's report that, while serving in Iraq, he had been swatting a large fly away and then yawned and it flew in his mouth, he was unable to spit it out, and he swallowed it. Dr. J.F. found it significant that the Veteran reported experiencing flu-like symptoms the day after swallowing the fly and found the same to be consistent with the expected response for contracting Lyme disease. Dr. J.F. also reviewed the Veteran's medical history, including a July 1997 treatment record which noted a low platelet count and low white blood cell count. Dr. J.F. noted his impression that those results were due to the Lyme infection. See January 2016 letter from Dr. J.F. 

Dr. J.F. also found the Veteran's reports that his current Lyme disease became symptomatic following a series of stressful events in 2012, to be consistent with the cycle of Lyme disease. Dr. J.F. explained that Lyme disease can be asymptomatic for many years, even decades, and stress can trigger symptoms. See January 2016 letter from Dr. J.F. Dr. J.F. noted that Lyme disease is a clinical diagnosis based on symptoms and laboratory results are merely used to confirm the diagnosis. See October 2017 addendum opinion from Dr. J.F. 

Although Dr. J.F. did not specifically list the Veteran's symptoms in the letters, Dr. J.F. noted that the Veteran's Lyme disease symptoms were triggered in 2012. Other evidence of record, including treatment records from Dr. J.F., the health summary from Dr. V.T., and the April 2016 VA examination report all confirm the Veteran's consistent complaints of balance and gait problems and that such symptoms began in 2012. 

Weighing the evidence for and against the finding of a current diagnosis, the Board finds that the evidence is at least in equipoise concerning a current Lyme disease diagnosis. The Board places a high probative value on Dr. J.F.'s diagnosis given his expertise in the field and extensive explanation of the Lyme disease diagnosis process coupled with Dr. B.M.'s determination that the Veteran does not have Parkinson's disease. 

In reaching this conclusion, the Board acknowledges that much of Dr. J.F.'s opinion was based on the Veteran's own reports but the Board notes that the Veteran is competent to report both swallowing the fly and feeling sick the next day, as these observations came to him through his senses. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). The Veteran has consistently reported this version of events throughout his pursuit of the service connection claim. The Board finds the Veteran's statements to be credible, particularly in light of the fact that some of the Veteran's reports went against his own interests. 

Further, the Board finds the July 2015 VA examiner's opinion to be less probative than Dr. J.F.'s opinion as it did not address all of the details explained by Dr. J.F. 

Moreover, the Board finds that the Veteran's current Lyme disease is related to the event in service. In this regard, Dr. J.F. considered the Veteran's competent and credible statements and determined that it was at least as likely as not that the Veteran's Lyme disease began in service when the Veteran swallowed the infected fly. Dr. J.F. noted that the Veteran's reported symptoms in service were consistent with the onset of Lyme disease. Dr. J.F. also explained that ticks are not the only vectors for Lyme disease and that the disease can also be transmitted by sand fleas and large biting flies. 

Further, the Board notes that the evidence supports a finding that the Veteran's current complaints of balance and gait symptoms are symptoms of his Lyme disease. The Veteran submitted a medical journal article that indicates that Parkinsonian-like symptoms may be caused by Lyme disease. The examiner also submitted a health summary from his private physician, Dr. V.T., which included a notation indicating "Lyme disease" was associated with the Veteran's health issues of balance problem, gait abnormality, and Parkinsonism. 

The Veteran's private neurologist, Dr. B.M., confirmed that the Veteran does not have Parkinson's disease. See August 2017 letter from Dr. B.M. 

None of the evidence of record indicates that the Veteran has a separate clinical diagnosis for his balance and gait complaints, but rather that these complaints are symptoms of his Lyme disease. The Veteran reported the same in a January 2016 statement associated with his claim for Lyme disease, as well as during a February 2017 informal conference, and again during the October 2017 hearing before the Board. 

As the evidence of record does not indicate that the Veteran has a separate diagnosis for the claimed balance issue, service connection for a "balance issue" as a separate disability is not warranted. However, the Veteran is not prejudiced by this finding as it is herein granting service connection for Lyme disease with balance and gait symptoms. 

Based on the foregoing, the Board finds that the evidence demonstrates a current diagnosis of Lyme disease, with balance and gait symptoms, is related to an event in service. Therefore, service connection for Lyme disease with balance and gait symptoms is granted. 

 ii. Cervical Spine

There is no dispute that the Veteran has a current cervical spine disability. X-ray evidence reveals that the Veteran has a diagnosis of degenerative disc disease of the cervical spine at C5-6 and C6-7. See August 2015 VA examination report. 

The Veteran asserts that his cervical spine disability began during his second period of service, in 2005. The Board notes that service treatment records for the second period of service are not available and the Veteran has been informed of the same. See e.g. June 2015 correspondence from the AOJ. The Board acknowledges that in situations such as this, where records once in the hands of the government are lost, it has a heightened obligation to explain its findings and conclusions and to consider carefully the benefit-of-the-doubt rule. O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991). The Board's analysis has been undertaken with this heightened duty in mind. 

In this case, the Veteran reported that he distinctly remembers experiencing neck soreness when sleeping on cots during the second period of service. The Board finds that the Veteran is competent to report the neck symptoms observed during the second period of service. Additionally, the Board finds the Veteran's statement to be credible. As such, the requirement for an in-service incurrence is met. 

The Veteran served for at least 90 days during the period from November 21, 2005 and February 23, 2006, and as such, he is entitled to the presumptions listed under 38 C.F.R. § 3.309(a), including arthritis. The Veteran's DDD of the cervical spine, however, was not diagnosed within one year of separation in February 2006. Nevertheless, because arthritis is a chronic illness listed under 38 C.F.R. § 3.309(a), it may also be shown to be related to service by virtue of continuity of symptomatology. 

The Veteran asserts that his cervical spine disability began during the second period of service. He also reports that he experienced continuity of cervical spine symptoms since that time. In support of his claim, he submitted a receipt for physical therapy for cervicalgia in June 2006. The Board finds that the proof of neck pain and treatment for the same, lends credibility to the Veteran's reports that he experienced neck pain since his second period of service. 

Moreover, in expressing the August 2015 VA opinion regarding the lack of a relationship between the current disability and the first period of service, the examiner reasoned that the Veteran's cervical spine disability could not be due to the first period of service because the Veteran's neck stiffness began in 2005. Such rationale actually supports a finding that the Veteran's neck symptoms began during the Veteran's second period of service. 

The Board finds the Veteran's statements that his neck symptoms began in during his second period of service, to be both competent and credible. Moreover the Board finds the Veteran's statements that his symptoms have continued since his second period of service, to be credible. There is no indication of any intervening event between separation from service in February 2006 and physical therapy in June 2006. 

Based on the foregoing, service connection is warranted for degenerative disc disease of the cervical spine. 

 iii. Acid Reflux

The Veteran asserts that he has GERD and/or hiatal hernia that began in service. 

As an initial matter, the Veteran has a current diagnosis of GERD and hiatal hernia, both of which result in acid reflux symptoms. See e.g. July 2015 VA examination. 

Next, the Board finds that the requirement for an in-service incurrence is met as the Veteran had acid reflux symptoms in service. The Veteran offered competent and credible statements that he regularly self-treated acid reflux symptoms during service, with Maalox and Tums. He submitted a buddy statement from C.K. who observed the Veteran repeatedly mention that he felt he was getting an ulcer and had severe heartburn, and observed the Veteran taking Maalox and tums every day during service in 1995-96. The Board finds the lay statement to be competent and credible. Thus, the requirement for an in-service incurrence is met. 

Finally, the Board finds that the evidence is in favor of finding that the Veteran's GERD and hiatal hernia began in service. 

The Veteran's internal medicine physician, Dr. C.H. submitted a letter dated in March 2017 in favor of the Veteran's claim. Dr. C.H. noted that he had treated the Veteran since February 2000. Dr. C.H. confirmed that the Veteran had current diagnoses of GERD and hiatal hernia and opined that both disorders more likely than not began while in service. Dr. C.H. explained that the opinion was based on his treatment of the Veteran, as well as the Veteran's reports regarding having significant acid reflux during service and that he carried a bottle of Maalox or Tums with him at all times during service. Dr. C.H. also explained that there is no way to tell how old a hiatal hernia is but that it is common knowledge that they can be present for years with no symptoms. 

The Board acknowledges that a seemingly negative opinion is also of record. The July 2015 VA examiner, identified as a primary care physician not an internal medicine specialist, reviewed the claim in light of whether the Veteran's acid reflux was part of a multisymptom undiagnosed illness. The July 2015 VA examiner determined that it was not part of a multisymptom undiagnosed illness because the Veteran had clinical diagnoses of GERD and hiatal hernia. The examiner did not address whether either of the diagnosed illnesses was related to service. 

The Board has no reason to reject the positive evidence of record. Based on the foregoing, the Board finds that service connection should be granted for the Veteran's GERD and hiatal hernia. 

 b. Increased Rating

The Veteran seeks a higher evaluation for his service-connected hypertension, which is currently assigned a 10 percent disability rating.

Hypertension is evaluated pursuant to 38 C.F.R. § 4.104 , Diagnostic Code 7101, and is assigned a 10 percent rating for diastolic blood pressure predominantly 100 or more, or; for systolic blood pressure predominantly 160 or more, or; as the minimum evaluation for an individual with a history of diastolic blood pressure predominantly 100 or more who requires continuous medication for control. A 20 percent rating is warranted for diastolic pressure of predominantly 110 or more, or; systolic pressure that is predominantly 200 or more. A 40 percent rating is assigned for diastolic pressure that is predominantly 120 or more. A 60 percent rating is assigned where diastolic pressure is predominantly 130 or more.

Review of the blood pressure readings contained in the VA treatment records indicates that the Veteran does not manifest diastolic pressure of predominantly 110 or more, or; systolic pressure that is predominantly 200 or more. The Board acknowledges the Veteran's assertions that because his required medication for hypertension has increased in dosage, his disability has worsened. However, 
the Veteran's blood pressure averages are well below the findings required for the next higher evaluation at all points pertinent to the appellate period. 

The records do not indicate any instances of diastolic pressure over 110 or systolic pressure over 200. As such, the evidence does not support a finding of diastolic pressure of predominantly 110 or more. In fact, the November 2015 VA examiner also noted that the Veteran's diastolic blood pressure was not predominantly 100 or more. Thus, it naturally follows that the Veteran did not have diastolic pressure of 110 or more. 

In reaching this conclusion, the Board has considered the Veteran's lay statements regarding the severity of his hypertension, as well as the buddy statement indicating that he had to be put on bed rest during his second period of service due to the severity of the hypertension. While the Board appreciates the Veteran's belief that his hypertension has worsened such that a higher rating is warranted, the Board must evaluate the disability according to the prescribed rating schedule. Further, the bed rest incident did not occur during the pendency of the claim for increase, or within the year prior to the claim for increase. Based on a review of the evidence of record, the Board finds that an evaluation in excess of 10 percent for the Veteran's hypertension disability is not warranted under Diagnostic Code 7101. See 38 C.F.R. § 4.104. 

The criteria for an increased rating for hypertension were not met or nearly approximated at any time pertinent to the appeal. 38 C.F.R. § 4.104, Diagnostic Code 7101. Consideration has been given to assigning a staged rating; however, at no time during the period in question has the hypertension disability warranted a higher rating. Hart v. Mansfield, 21 Vet. App. 505 (2007).


ORDER

Service connection for Lyme disease with balance and gait symptoms is granted. 

Service connection for a balance disorder, other than as a symptom of Lyme disease, is denied. 

Service connection for degenerative disc disease of the cervical spine is granted. 

Service connection for GERD and hiatal hernia is granted. 

The claim for a rating in excess of 10 percent for hypertension, is denied. 



______________________________________________
MARJORIE A. AUER
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs