﻿Citation Nr: AXXXXXXXX
Decision Date: 01/31/20 Archive Date: 01/30/20

DOCKET NO. 190529-9116
DATE: January 31, 2020

ORDER

Entitlement to service connection for chronic renal disease, status post right kidney removal (urothelial carcinoma with right nephroureterectomy) (also claimed as urostomy and nephrectomy), to include as due to herbicide agent exposure is granted.

Entitlement to service connection for transitional cell carcinoma in situ of bladder, to include as due to herbicide agent exposure is granted.

Entitlement to service connection for soft tissue sarcoma, to include as due to herbicide agent exposure is denied.

REMANDED

Entitlement to service connection for erectile dysfunction, to include as due to herbicide agent exposure is remanded.

Entitlement to service connection for prostatic glandular and stromal hyperplasia, benign (claimed as prostate cancer and removal), to include as due to herbicide agent exposure is remanded. 

Entitlement to service connection for a skin disorder, to include as due to herbicide agent exposure is remanded.

FINDINGS OF FACT

1. The Veteran had active duty military service in Vietnam from July 1968 to July 1969; therefore, it is presumed that he was exposed to herbicide agents during service. 

2. The Veteran’s chronic renal disease, status post right kidney removal (urothelial carcinoma with right nephroureterectomy) (also claimed as urostomy and nephrectomy) is related to his herbicide agent exposure during military service. 

3. The Veteran’s transitional cell carcinoma in situ of bladder is related to his herbicide agent exposure during military service.

4. It is not shown that the Veteran has a current diagnosis of soft tissue sarcoma.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for chronic renal disease, status post right kidney removal (urothelial carcinoma with right nephroureterectomy) (also claimed as urostomy and nephrectomy), to include as due to herbicide agent exposure have been met. 38 U.S.C. §§ 1101, 1110, 1112, 1116, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309. 

2. The criteria for entitlement to service connection for transitional cell carcinoma in situ of bladder, to include as due to herbicide agent exposure have been met. 38 U.S.C. §§ 1101, 1110, 1112, 1116, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309.

3. The criteria for entitlement to service connection for soft tissue sarcoma, to include as due to herbicide agent exposure have not been met. 38 U.S.C. §§ 1101, 1110, 1112, 1116, 5107; 38 C.F.R. §§ 3.303, 3.307, 3.309. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran had active service in the United States Army from March 1968 to March 1970, to include service in Vietnam from July 1968 to July 1969. For his meritorious service, the Veteran was awarded (among other decorations) the Combat Infantryman Badge and the Vietnam Service and Campaign Medals.

During the pendency of the appeal, in January 2019, the Veteran opted in to the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form; he elected to have all eligible issues currently on appeal processed in the Higher-Level Review lane. In March 2019, the RO issued a RAMP rating decision that, in pertinent part, found that new and relevant evidence had been submitted to warrant readjudicating the claim for service connection for transitional cell carcinoma in situ of bladder, to include as due to herbicide agent exposure. The Board is bound by this favorable finding and has recharacterized the issue on appeal to reflect such. 38 C.F.R. § 3.104(c) (2019). However, the March 2018 RAMP rating decision ultimately still continued the denial of the Veteran’s claims. Subsequently, the Veteran submitted a VA Form 10182 Decision Review Request: Board Appeal (NOD) in May 2019. The Veteran selected the Direct Review Lane. No hearing was requested.

1. Entitlement to service connection for chronic renal disease, status post right kidney removal (urothelial carcinoma with right nephroureterectomy) (also claimed as urostomy and nephrectomy), to include as due to herbicide agent exposure. 

2. Entitlement to service connection for transitional cell carcinoma in situ of bladder, to include as due to herbicide agent exposure.

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). The determination as to whether these requirements are met is based on an analysis of all the evidence of record and an evaluation of its credibility and probative value. Baldwin v. West, 13 Vet. App. 1 (1999); 38 C.F.R. § 3.303(a).

Certain chronic diseases (such as bladder cancer and kidney disease) may be service-connected on a presumptive basis if manifested to a compensable degree in a specific period of time post-service. 38 U.S.C. §§ 1112, 1137; 38 C.F.R. §§ 3.307, 3.309. Also, where a chronic disease is shown as such in service, subsequent manifestations of the same chronic disease are generally service-connected. If a chronic disease is noted in service, but chronicity in service is not adequately supported, a showing of continuity of symptomatology after separation is required. This only applies to certain diseases listed in 38 C.F.R. § 3.309(a). See 38 C.F.R. §§ 3.303(b), 3.307, 3.309; Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

If a veteran was exposed to an herbicide agent (to include Agent Orange) during active military, naval or air service and has contracted an enumerated disease listed in 38 C.F.R. § 3.309(e) that has manifested to a degree of 10 percent or more, the veteran is entitled to a presumption of service connection for such disease even though there is no record of such disease during service. 38 U.S.C. § 1116; 38 C.F.R. §§ 3.307, 3.309(e). 

A veteran who, during active military, naval, or air service, served in the Republic of Vietnam during the Vietnam era, shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service. The last date on which such a veteran shall be presumed to have been exposed to an herbicide agent shall be the last date on which he served in the Republic of Vietnam during the Vietnam era. “Service in the Republic of Vietnam” includes service in the waters offshore and service in other locations if the conditions of service involved duty or visitation in the Republic of Vietnam. 38 C.F.R. § 3.307(a)(6)(iii).

The Veteran is seeking service connection for chronic renal disease, status post right kidney removal and service connection for transitional cell carcinoma in situ of bladder. The Veteran asserts that his bladder disorder and kidney disorder are related to his exposure to herbicide agents during his tour in Vietnam while he was in the military. See VA 21-526EZ, Fully Developed Claim (Compensation) and January 2018 Correspondence. 

In March 2004, in a response to a VA 21-3101 Request for Information, the Veteran’s military service in Vietnam was verified. The Veteran served in Vietnam from July 1968 to July 1969. Therefore, it is presumed that the Veteran has been exposed to herbicide agents (Agent Orange) while he was in service. See 38 C.F.R. § 3.307(a)(6)(iii). 

However, as the Veteran’s bladder and kidney disorders are not enumerated diseases listed in 38 C.F.R. § 3.309(e), presumptive service connection is not warranted for herbicide agent exposure. Presumptive service connection is also not warranted under 38 C.F.R. § 3.309(a) or under a theory of continuity of symptomatology because these diseases did not manifest until many years after service. Also, the Veteran does not contend that his chronic renal disease and transitional cell carcinoma in situ of bladder were diagnosed in service. Instead, he contends that they are related to his herbicide agent exposure. 

Post service treatment records show that the Veteran was diagnosed with bladder cancer, carcinoma in 1998. In September 2003, the Veteran was admitted to a private medical center for right nephroureterectomy because he had a right renal pelvis filling defect. Recent VA examinations in October 2017 and December 2017 confirm that the Veteran currently has diagnoses of bladder cancer and chronic renal disease. 

The only medical opinion of record regarding whether the Veteran’s kidney and bladder disorders are related to his herbicide agent exposure is a positive private medical opinion from Dr. C.K., dated November 2018, that was submitted in December 2018 by the Veteran. Dr. C.K., a board-certified Radiation Oncologist, reviewed the Veteran’s claims file before rendering his opinion. Dr. C.K. ultimately concluded that based on the Veteran’s evidence of exposure and medical evidence on Dioxins, it was as likely as not that the Veteran’s bladder cancer and renal urothelial cancer, and their radical surgeries, were caused by his exposure to Dioxins. In offering this opinion, Dr. C.K. cited both studies regarding dioxin exposure and rates of various cancers, as well as the Veteran’s personal and family history. 

The Board finds that this November 2018 private opinion by Dr. C.K. to be well-written, detailed, and sufficiently supportive of the conclusion with an in-depth rationale. Therefore, the Board finds this opinion to be of great probative value and weigh in favor of the Veteran’s claims for service connection for chronic renal disease, status post right kidney removal (urothelial carcinoma with right nephroureterectomy) (also claimed as urostomy and nephrectomy) and transitional cell carcinoma in situ of bladder. There are no medical opinions of record to contradict Dr. C.K.’s conclusion that the Veteran’s bladder and kidney disorders are related to his herbicide agent exposure. 

Resolving all reasonable doubt in favor of the Veteran, and based on the facts found, the Board concludes that service connection for chronic renal disease, status post right kidney removal (urothelial carcinoma with right nephroureterectomy) (also claimed as urostomy and nephrectomy) and transitional cell carcinoma in situ of bladder is warranted. 

3. Entitlement to service connection for soft tissue sarcoma, to include as due to herbicide agent exposure.

The Veteran is seeking service connection for a soft tissue sarcoma. He asserts that it is related to his exposure to herbicide agents while he was in the military. It has already been shown that the Veteran has been exposure to herbicide agents during his military service; therefore, the issue of whether the Veteran’s had an in-service injury or event that occurred is not in contention. The main issue is whether the Veteran currently has soft tissue sarcoma. 

It is well-established that the existence of a current disability is the cornerstone of any claim for VA disability compensation. 38 U.S.C. § 1110; 38 C.F.R. § 3.303. The Court has held that this requirement “is satisfied when a claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim and that a claimant may be granted service connection even though the disability resolves prior to the Secretary’s adjudication of the claim.” McClain v. Nicholson, 21 Vet. App. 319, 321 (2007); but see Romanowsky v. Shinseki, 26 Vet. App. 289, 293-94 (2013) (holding that “when the record contains a recent diagnosis of a disability prior to a veteran filing a claim for benefits based on that disability, the report of diagnosis is relevant evidence that the Board must address in determining whether a current disability existed at the time the claim was filed or during its pendency.”). 

A review of the Veteran’s post service treatment records does not show that they include a diagnosis of soft tissue sarcoma. The Veteran has had VA examinations in October 2017 and December 2017 for his prostate, kidney, and bladder. However, he was not diagnosed with soft tissue sarcomas. In fact, he was diagnosed with chronic renal disease, transitional cell carcinoma in situ of bladder, and benign prostatic glandular and stromal hyperplasia. Further, VA treatment and private treatment records are silent for any such diagnosis. 

Although the Veteran is competent to report signs or symptoms of his disability, he is not competent to diagnose cancer. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007) (noting that lay persons are not competent to diagnose cancer). As the record does not show a diagnosis of prostate cancer during the relevant time period, the Board finds that there is no valid claim of service connection for such disability. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992) (holding that service connection cannot be granted “[i]n the absence of proof of a present disability.”). 

Accordingly, the claim for service connection for soft tissue carcinoma, to include as due to herbicide agent exposure, is legally insufficient, and must be denied as lacking in legal merit. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).

REASONS FOR REMAND

1. Entitlement to service connection for erectile dysfunction, to include as due to herbicide agent exposure is remanded.

In October 2017, the Veteran was afforded a VA examination for prostate cancer. The Veteran was diagnosed with erectile dysfunction. The VA examiner noted that erectile dysfunction had multifactorial etiology, including age, vascular, psychological, and neuromuscular. The examiner stated that he was unable to state the more likely cause without resorting to speculation. 

The Board finds that this opinion is speculative. Therefore, a remand is warranted for a new VA examination and opinion to determine the nature and etiology of the Veteran’s erectile dysfunction. 

2. Entitlement to service connection for prostatic glandular and stromal hyperplasia, benign (claimed as prostate cancer and removal), to include as due to herbicide agent exposure is remanded.

In October 2017, the Veteran was afforded a VA examination for prostate cancer. The Veteran was diagnosed with benign prostatic glandular and stromal hyperplasia. However, an opinion was not rendered on whether his prostate disorder was related to his herbicide agent exposure. Therefore, on remand, an opinion should be obtained addressing this issue. 

3. Entitlement to service connection for a skin disorder, to include as due to herbicide agent exposure is remanded.

A March 2011 VA dermatology outpatient note revealed that the Veteran had a benign neoplasm on his scalp after a shave biopsy. He reported that it did not give him any pain. As the Veteran has not had a VA examination for his skin disorder, a remand is warranted for a VA examination to determine the nature and etiology of his skin disorder. See McLendon v. Nicholson, 20 Vet. App. 79 (2006).

The matters are REMANDED for the following action:

1. Schedule the Veteran for a VA examination to determine the nature and etiology of his erectile dysfunction and his benign prostatic glandular and stromal hyperplasia. The record and a copy of this remand must be made available and reviewed by the examiner in conjunction with the examination. All necessary tests should be completed. The VA examiner should address the following:

(a.) Whether it is at least as likely as not that the Veteran’s prostate disorder is related to his military service, to include conceded exposure to herbicide agents?

(b.) Whether it is at least as likely as not that the Veteran’s prostate disorder is caused by, proximately due to, and/or aggravated by his service-connected chronic renal disease, status post right kidney removal (urothelial carcinoma with right nephroureterectomy) (also claimed as urostomy and nephrectomy) and/or transitional cell carcinoma in situ of bladder. 

(c.) Whether it is at least as likely as not that the Veteran’s erectile dysfunction is related to his military service, to include conceded exposure to herbicide agents? 

(d.) Whether it is at least as likely as not that the Veteran’s erectile dysfunction is caused by, proximately due to, or aggravated by his service-connected chronic renal disease, status post right kidney removal (urothelial carcinoma with right nephroureterectomy) (also claimed as urostomy and nephrectomy) and/or transitional cell carcinoma in situ of bladder?

(e.) Whether it is at least as likely as not that the Veteran’s erectile dysfunction is caused by, proximately due to, and/or aggravated by his prostate disorder?

2. Schedule the Veteran for a VA examination to determine the nature and etiology of his skin disorder. The record and a copy of this remand must be made available and reviewed by the examiner in conjunction with the examination. All necessary tests should be completed. The VA examiner should address the following:

(a.) Whether it is at least as likely as not that the Veteran’s skin disorder is related to his military service, to include his conceded herbicide agent exposure?

 

 

Evan M. Deichert

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J. Crawford, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.