﻿Citation Nr: AXXXXXXXX
Decision Date: 03/31/21 Archive Date: 03/31/21

DOCKET NO. 200518-88237
DATE: March 31, 2021

ORDER

Entitlement to service connection for a back disorder is denied.

FINDING OF FACT

A back disorder was not manifest during service and arthritis was not manifest within one year of separation. A back disorder is unrelated to service.

CONCLUSION OF LAW

A back disorder was not incurred in or aggravated by active service and arthritis may not be presumed to have been incurred therein. 38 U.S.C. §§ 1101, 1112, 1113, 1131, 1137; 38 C.F.R. §§ 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from October 21, 1976 to December 1, 1976.

The Veteran filed a timely VA Form 10182 in response to a May 2020 rating decision. He selected the Hearing lane and testified before the undersigned Veterans Law Judge at a December 2020 Board hearing. Accordingly, the Board has considered the evidence of record at the time of the May 2020 rating decision, the Veteran’s testimony, and additional evidence submitted within 90 days of the hearing.

In the May 2020 rating decision on appeal, the AOJ found that new and relevant evidence had been received for readjudication of the claim on its merits. The AOJ also found that the Veteran has a current back disability, specifically multi-level degenerative disc disease. The Board is bound by these favorable findings and will not address the criteria for new and relevant evidence. There is no evidence that such findings were clearly and unmistakably erroneous.

1. Entitlement to service connection for a lumbar spine disorder

Veterans are entitled to compensation if they develop a disability “resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty.” 38 U.S.C. § 1110 (wartime service), 1131 (peacetime service).

To establish entitlement to service-connected compensation benefits, a Veteran must show: “(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service -the so-called ‘nexus’ requirement.” Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service establishes that the disability was incurred in service. 38 C.F.R. § 3.303 (d). The determination as to whether these requirements are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. See Baldwin v. West, 13 Vet. App. 1, 8 (1999).

VA treatment records indicate that the Veteran is prescribed medication for osteoarthritis. VA and private treatment records submitted by the Veteran do not explicitly indicate that the Veteran has been diagnosed with arthritis of the spine. Rather he has been diagnosed with degenerative disc disease. Regardless, the Board notes that arthritis is identified as a “chronic disease” under 38 U.S.C. § 1101 and 38 C.F.R. § 3.309 (a).

“For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word “Chronic.” When the disease identity is established (leprosy, tuberculosis, multiple sclerosis, etc.), there is no requirement of evidentiary showing of continuity. Continuity of symptomatology is required only where the condition noted during service (or in the presumptive period) is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim.” 38 C.F.R. § 3.303 (b).

The Veteran contends that his back disorder is the direct result of his active service. Specifically, he testified as his Board hearing that he injured his back while repeatedly lifting bed racks and exercising. The Veteran reports that he woke up with pain in his back radiating to his groin. 

Service treatment records document a normal spine and musculoskeletal system upon clinical evaluation at enlistment. A November 24, 1976, treatment note documents a complaint of pain in the left groin for three days. There was general tenderness in the abdomen but no hernia. It was assessed as a muscle strain and Norgesic (pain reliever and muscle relaxer) was prescribed. On November 26, 1976, the Veteran signed a statement that he was physically qualified for separation and that he did not suffer any injuries or illnesses during his active duty. 

Personnel records indicate that the Veteran was discharged on December 1, 1976, due to “unsuitability – inaptitude.” The Veteran has reported that it was due to failing swim qualifications as a result of his injury. 

The primary point of contention is whether the Veteran experienced a back injury or relevant symptoms during service. The Veteran asserts that the November 24, 1976, treatment note documenting left groin pain inaccurately represents his symptoms at the time. He reports that he was experiencing back pain with radiating pain into the groin, and that the examining official did not perform an adequate examination. 

The Veteran has submitted a multitude of private treatment records and medical opinions in support of his claim. These records include orthopedic treatment records from October and November 1979 documenting lower back pain. The treating physician notes continued discomfort in the lower back, but the physician did “not anticipate any permanent partial disability at this time.” The Veteran has also submitted a variety of prescriptions from 1982 and 1984 seemingly to treat back pain. He has also submitted a variety of treatment records from the 1990’s and 2000’s documenting treatment for degenerative disc disease. 

At his December 2020 Board hearing, the Veteran testified that he began receiving treatment for his back in the immediate aftermath of separation, around the time he filed a January 1977 compensation claim for a heart disorder. However, when trying to retrieve these records the Veteran was told they were no longer available as the physician’s office routinely destroyed old medical records to protect patient privacy. 

The private medical opinions submitted by the Veteran include a July 2020 opinion from an internist. The physician reports that he reviewed the November 24, 1976, treatment note and found it to be “not satisfactory in terms of evidence to support the diagnosis (exam and history are lacking), and incomplete in the sense that no follow-up was made to re-evaluate the treatment and solidify the assessment. The term “Muscular strain” is a very non-specific diagnosis, and [omitted] denotes an issue that is acute and self-limiting. [The Veteran’s] problem is chronic and disabling.” The physician goes on to conclude that the in-service assessment of muscle strain was inaccurate based on a review of post-service evaluations. 

A February 2020 private medical opinion issued by a physician “Board-certified in Physical Medicine and Rehabilitation” concludes that the Veteran’s low back disorder is “more likely than not related to the event described during his military training as there is no known per military training history or apparent cause or conditions for his condition prior [to] the event. The said event has caused and contributed to his present-day condition, signed under the pains and penalties within a reasonable degree of doubt.” The examiner provides a brief outline of the Veteran’s medical history. 

An April 2020 private medical opinion issued by a neurosurgeon briefly outlines the Veteran’s medical history, including the November 1976 service treatment record, and concludes that the Veteran’s current back disorder is more likely than not related to the in-service muscle strain. The examiner explains: “Based on the patient’s description of his initial pain starting on 11/24/1976 it would appear that his injury is indeed service-connected. As noted above there is no history of back pain or leg pain prior to patient’s injury of 11/24/1976.” 

The Veteran also submitted a September 2020 Muscle Injuries Disability Benefits Questionnaire completed by a private physician. The examiner reports that the Veteran was diagnosed with muscle strain in service and that chronic lumbar and adductor pain that radiates into hips, glutes and legs has progressed since. The examiner states that in their medical opinion it is more likely than not that the Veteran’s “current medical condition is related to his muscle strain injury” documented in service treatment records, but provides no explanation as to how a back disorder is related to a left groin strain. 

The Veteran has also submitted medical literature addressing the manifestations of discogenic pain syndrome, which various private treatment records have diagnosed him with. The article indicates that the syndrome may manifest in pain in the joint, disc, nerve root, and into the legs and soft tissues. Notably, the medical literature does not specifically address the Veteran’s unique situation and medical history, and no private physician addressed this medical literature in issuing their opinions. 

In adjudicating a claim, the Board is charged with the duty to assess the credibility and weight given to evidence. See Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997). Competency of evidence differs from weight and credibility. The former is a legal concept determining whether testimony may be heard and considered by the trier of fact, while the latter is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997).

The crux of each private medical opinion is the Veteran’s assertion that the November 24, 1976, service treatment record inaccurately documented his symptoms and misdiagnosed the disorder. The Veteran states that he experienced back pain radiating into his groin. However, the Board finds no reason to question the validity of the November 24, 1976, treatment note. It is assumed that those seeking care would provide the most accurate information so as to receive the appropriate amount of care. There is also no reason to find that the examining professional intentionally or inadvertently failed to report back pain on the treatment note. The treatment note is limited to left groin pain and was assessed as a muscle strain of the left groin. This is inconsistent with the Veteran’s current assertions. The Board concludes that the Veteran’s initial reports for treatment purposes for left groin pain are far more probative than current reports by the Veteran in support of a claim for compensation. As a result, his statements with respect to onset and continuity are not credible.

The probative value of a medical opinion primarily comes from its reasoning; threshold considerations are whether a person opining is suitably qualified and sufficiently informed. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). In this case, the Board finds each private medical opinion to be of no probative value as there is no credible and objective evidence that the claimed in-service back injury occurred or that relevant symptoms manifested. The Board finds that the opinions are based on an inaccurate factual premise. See Reonal v. Brown, 5 Vet. App. 458, 461 (1993) (a medical opinion based on an inaccurate factual premise is not probative). 

Contemporaneous treatment records make no reference to an in-service injury to the Veteran’s back. The treatment record at issue clearly indicates that the Veteran’s symptoms were limited to the left groin and the assessment of a muscle strain is clearly specific to the left groin, and not a “general muscle strain” of an undetermined anatomical region. Furthermore, the Veteran signed a statement prior to his discharge attesting to his health suggesting that he was not experiencing relevant symptoms and that the reported left groin strain was a transitory condition. 

With respect to the July 2020 private medical opinion, the physician questions the adequacy the service treatment record and states that a muscle strain is “acute and self-limiting” and that the Veteran’s current disorder is chronic and disabling. This physician did not examine the Veteran on November 24, 1976, and the assertion that the condition diagnosed by the examining medical professional (muscle strain) is an acute and transitory condition as distinguishable from the Veteran’s current chronic back disorder does not support the Veteran’s assertion that his current disorder is related to service.

The February 2020, April 2020, and September 2020 private opinions similarly rely on the Veteran’s reported history of an in-service injury to his back and related symptoms. As noted, the Board has found such assertions to be noncredible as service treatment records clearly indicate that the Veteran sought treatment for left groin pain and make no reference to the back. The examiners’ opinions that the current back disorder is related to service are based entirely upon the Veteran’s self-reported history, which is clearly contradicted by the objective medical evidence of record. The examiners do not make the assertion that the Veteran’s groin pain was a manifestation of the current back disorder. Rather, their opinions rely upon the premise that the Veteran experienced back pain in service and the November 1976 treatment note inaccurately documented his symptoms. 

In sum, there is no documentation of any relevant in-service diagnosis, complaint, or treatment, and the back was normal upon separation. While the Veteran reports in-service back pain and injury, the contemporaneous service treatment records contradict his assertions. The main premise of the private medical opinions, that the Veteran had in-service back symptoms, is inaccurate and not supported by the contemporaneous medical evidence.

In sum, there is no reliable evidence linking the Veteran’s current back disorder to service. The contemporaneous records establish that there were no documented manifestations of a chronic back disorder in service; the back was normal throughout service; there were no manifestations of arthritis within one year of separation; and the back disorder first manifest years after separation. The Board finds the contemporaneous records to be far more probative and credible than the Veteran’s report of onset, continuity, and treatment, and the private medical opinions based upon the Veteran’s reports in pursuit of compensation. 

Here, chronic disease (arthritis) of the spine was not “noted” during service. 3.303(b). Service treatment records do not show a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. Rather, the spine was normal throughout service. Since the Veteran did not serve for 90 days, presumptive service fconnection is not applicable.

The Board finds that the contemporaneous in-service and post-service treatment records are entitled to greater probative weight and credibility than the lay statements of the Veteran. The recent private medical opinions have no probative value as they are based upon an inaccurate factual premise, specifically the presence of back symptoms in service. The more probative evidence establishes that the Veteran did not have a chronic back disorder during service. Furthermore, the evidence establishes that the remote onset of a back disorder is unrelated to service. Here, the appellant was seen in 1979 for back complaints; nothing at that time suggested an in-service onset or a medically chronic condition. When seen in 2001, he reported a 2-year history of relevant symptoms rather than an in-service onset. This would be consistent with the 1979 assessment of an examiner that he did not anticipate any permanent partial disability at that time (1979). We find the 1979 and 2001 records to be far more probative than medical opinions based upon inaccurate factual predicates. The Board finds that the preponderance of the evidence is against the claim and the claim must be denied.

The Board recognizes that the Veteran was not afforded a VA examination with respect to this claim. However, no examination is necessary for adjudication. In determining whether the duty to assist requires that a VA medical examination be provided, or medical opinion obtained, with respect to a veteran’s claim for benefits, there are four factors for consideration. 

These four factors are: (1) whether there is competent evidence of a current disability or persistent or recurrent symptoms of a disability; (2) whether there is evidence establishing that an event, injury, or disease occurred in service, or evidence establishing certain diseases manifesting during an applicable presumption period; (3) whether there is an indication that the disability or symptoms may be associated with the veteran’s service or with another service-connected disability; and (4) whether there otherwise is sufficient competent medical evidence of record to make a decision on the claim. See McLendon v. Nicholson, 20 Vet. App. 79 (2006); 38 U.S.C. § 5103A (d); 38 C.F.R. § 3.159 (c)(4). 

Here, there is no credible evidence of record with respect to the existence of an in-service event, injury, or disease. There is clearly sufficient competent medical evidence of record to adjudicate the Veteran’s claim. Absent such evidence, the Board finds that it is unnecessary to require the Veteran to report for a VA medical examination or to ask a medical expert to review the record because any examination report or medical opinion could not provide competent evidence of the incurrence of the claimed disability in service.

 

 

H. N. SCHWARTZ

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board W. R. Stephens, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.